**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**Case No.:_____**

| | |
|---|---|
| RAY KIFER, JR., <br><br> Plaintiff, <br><br> v. <br><br> DAVID SCOTT BURROUGHS, in his individual capacity, DAVID SPENCER in his individual capacity, KYLE BEAM in his individual capacity, JOSH BEAM in his individual capacity, JIMMY WILLIAMS in his individual capacity and UNKNOWN FEDERAL AGENT, in his individual capacity, <br><br> Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff RAY KIFER, JR., by and through his attorneys Rudolf Widenhouse, hereby complain of defendants and allege as follows:

## <u>INTRODUCTION</u>

1.      The facts of this case are simple and terrifying.  In an extraordinary abuse of power, Ex-Anson County Sheriff Deputy David Scott Burroughs ("Burroughs") wielded his authority as a sworn law enforcement officer to fabricate a crime and frame Ray Kifer, Jr. ("Ray Kifer" or "Kifer") for a felony drug offense that he did not commit.

2.      As a result of Burroughs' conduct, Ray Kifer was arrested and interrogated, and suffered hours of psychological trauma before the truth finally came out.

3.      The motivation behind this shocking story is simple: jealousy. Kifer was dating Burroughs' ex-girlfriend, Yajyuam Lela Vang.  Burroughs wanted Vang back.

Stoked by envy, Burroughs tried to eliminate Kifer by having him arrested and charged with a serious enough crime that he would serve prison time.

4.      Upon information and belief, Burroughs used the other defendants to assist him in carrying out his plan.

5.      Burroughs has since been arrested and charged with making a false police report, obstructing justice, breaking and entering a motor vehicle, possession of heroin, possession of marijuana, and possession of methamphetamine for his role in this travesty.  Ray Kifer is still struggling to recover from the nightmare.

## PARTIES

6.      Plaintiff Ray Kifer is an individual who lives in Ohio.

7.       On information and belief, at all times relevant to this Complaint, defendant David Scott Burroughs was a resident of Anson County, North Carolina.  He was employed as a deputy with the Anson County Sheriff's Department. At all relevant times, he was acting within the scope of his official duties and under color of law. Defendant Burroughs is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

8.       On information and belief, at all times relevant to this Complaint, defendant David Spencer was a resident of Anson County, North Carolina.  He was employed as a deputy with the Anson County Sheriff's Department. At all relevant times he was acting within the scope of his official duties and under color of law.  Defendant Spencer is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

9.      On information and belief, at all times relevant to this Complaint defendant Kyle Beam was a resident of Anson County, North Carolina.  He was employed as a deputy with the Anson County Sheriff's Department.  At all relevant times, he was acting within the scope of his official duties and under color of law.  Defendant Kyle Beam is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

10.      On information and belief, at all times relevant to this Complaint, defendant Josh Beam was a resident of Anson County, North Carolina.  He was employed as a deputy with the Anson County Sheriff's Department.  At all relevant times, he was acting within the scope of his official duties and under color of law.  Defendant Josh Beam is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

11.      On information and belief, at all times relevant to this Complaint, defendant Jimmy Williams was a resident of Anson County, North Carolina.  He was employed as a deputy with the Anson County Sheriff's Department.  At all relevant times, he was acting within the scope of his official duties and under color of law.  Defendant Williams is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

12.      On information and belief, at all times relevant to this Complaint defendant, Unknown Federal Agent was a resident of Anson County, North Carolina, and was employed by either the DEA or the Department of Homeland Security.  At all relevant times, he was acting within the scope of his official duties and under color of

law.  Defendant Unknown Federal Agent is sued in his individual capacity, and is a "person" as that term is used in the text of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

13.　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

14.　This Court has jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

15.　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The plaintiff is a citizen of the state of Ohio.  All defendants are citizens of the state of North Carolina.  The amount in controversy, without interest or costs, exceeds the sum or value of $75,000.

16.　Venue in the Western District of North Carolina is proper pursuant to 28 U.S.C. § 1391.

## JURY DEMAND

17.　Pursuant to the Seventh Amendment to the Constitution of the United States, Plaintiff hereby requests a jury trial on all issues and claims set forth in this Complaint.

## Factual Overview

18.　In January 2018, Yajyuam Lela Vang broke off a dating relationship with then Anson County Sheriff's Deputy David Scott Burroughs.  Soon after, Vang began dating Ray Kifer.

19.     Within a few weeks of dating, Vang and Kifer noticed Burroughs driving around her neighborhood in his marked Sheriff's car.  Burroughs lived in a different part of Anson County, nearly 20 minutes away from Vang and Kifer's neighborhood.

20.     On one occasion in February 2018, Burroughs showed up outside Vang's parents' home in his patrol car.  Vang was having a get-together with friends and noticed Burroughs' car as she was preparing food inside.

21.     Vang walked outside and approached Burroughs.  Burroughs threatened Vang and made disparaging remarks about Kifer.  As Vang and Burroughs were engaged in a back-and-forth, Kifer showed up for the get-together.  Burroughs threatened Kifer while sitting inside of his patrol car before leaving.

22.     Later that evening, Burroughs approached Vang's home while Kifer was spending the night.  Burroughs made an audio recording of Vang and Kifer's intimate interactions.

23.     Upon information and belief, Burroughs then shared the audio recording with other sheriff deputies in Anson County in an effort to embarrass and harass Vang and Kifer.

24.     On March 7, 2018, Vang and Kifer were in Kifer's car together heading to Vang's workplace around 3:30 p.m.  As the two drove along Ansonville-Polkton Road, an Anson County Sheriff's car pulled up close to the rear bumper of Kifer 's car.

25.     Vang recognized the driver of the car as Deputy Sheriff David Spencer.

26.     Upon information and belief, Spencer was friends with Burroughs and aware of the break-up between Burroughs and Vang.

27.     Spencer tailed Kifer 's car until they arrived at the intersection of Ansonville-Polkton Road and 742 South.  At that point, Spencer pulled off in another direction.

28.     Vang arrived at work.  Kifer left and began to drive back home.

29.     Within minutes of leaving Vang at her workplace, Kifer was pulled over by an Anson County Sheriff's deputy car running sirens and blue lights.  The Sheriff's Deputy was David Spencer.

30.     Spencer told Kifer that he was speeding.  Kifer denied he was speeding.  Spencer then told Kifer he smelled an odor of marijuana coming from the vehicle.  Kifer told him that was impossible.

31.     Upon information and belief, Spencer knew or reasonably should have known that Kifer had not been speeding, and that there was no odor of marijuana coming from the vehicle.

32.     Upon information and belief, this stop was pretextual and part of Burroughs plan to frame Kifer for a drug offense he did not commit.

33.     Spencer asked for consent to search the vehicle.  Kifer agreed.

34.     Spencer placed Kifer in the back of his patrol car.  Kifer called Vang from the back of the patrol car.  He also called his sister and his father to tell them what was going on.

35.     Spencer began to search the trunk of Kifer 's car.  Within a few minutes, another patrol car driven by Sheriff's deputy Kyle Beam pulled up.

36.     Spencer and Kyle Beam conferred near Beam's car, then together approached Kifer and told him he was being arrested.  Kifer asked why.  Neither Spencer nor Beam gave a reason for Kifer 's arrest.

6

37.     Upon information and belief, Spencer and Kyle Beam knew or reasonably should have known that there was no probable cause for this arrest.

38.     Upon information and belief, this arrest was part of Burroughs' plan to frame Kifer.

39.     Another SUV pulled up on the scene at this time.  Two Anson County Sheriff's narcotic lieutenants, Josh Beam and Jimmy Williams, were in this SUV, as well as another person in an unknown uniform.  Upon information and belief, the third person was a federal agent.

40.     Kifer 's car was seized by Spencer and Kyle Beam and impounded.

41.     Upon information and belief, Spencer and Kyle Beam knew or reasonably should have known that there was no legal basis to seize Kifer's car.

42.     Kifer was handcuffed, then put into the SUV with Josh Beam, Jimmy Williams and the unknown federal agent.

43.     Upon information and belief, Josh Beam, Jimmy Williams and the unknown federal agent knew or reasonably should have known that there was no probable cause to arrest and handcuff Kifer.

44.     Kifer was told by Josh Beam, Jimmy Williams and the unknown federal agent that he was being taken to the sheriff's department.

45.     Kifer still had no idea why he was under arrest.

46.     Kifer silently watched from the front passenger seat of the SUV while it took turn after turn until he was no longer familiar with his location.

47.     The SUV eventually turned onto a darkened road off Route 54 to a secluded area where Kifer could see a small air strip and a nondescript building.

48.     Kifer was terrified.  He believed he was about to be killed.

49.     Kifer asked if this was the sheriff's department.  He was told that Josh Beam had to pick something up.

50.     Josh Beam then left the SUV to go inside the building.  Jimmy Williams and the unknown federal agent remained in the car with Kifer.

51.     Once Beam was inside the building, Williams turned the SUV around on the air strip and parked away from the door where Beam entered the building.

52.     Upon information and belief, while inside this building Josh Beam obtained illegal controlled substances.

53.     Upon information and belief, the other defendants knew or reasonably should have known that this is what Josh Beam did inside the building.

54.     After a few minutes, Beam returned to the SUV.  Williams then headed to the sheriff's department.

55.     When the SUV arrived at the sheriff's department, Kifer was taken into an interrogation room by Josh Beam, Jimmy Williams and the unknown federal agent.

56.     Josh Beam handed Kifer papers and read him his Miranda Rights.

57.     Kifer asked what he was being charged with before signing the papers.

58.     The unknown federal agent said they would wait for the evidence to arrive until they told him.

59.     Panicking, Kifer signed the papers and waived his Miranda Rights.

60.     The unknown federal agent began asking Kifer questions.  After a period of questioning, he stopped and said he was going to get the evidence.

61.     The unknown federal agent returned with Josh Beam.  They put a bag marked "evidence" on the table in front of Kifer.

62.     Upon information and belief, Josh Beam and the unknown federal agent knew or reasonably should have known that this "evidence" had not been found in Kifer's car or in his possession or control.

63.     Kifer could smell marijuana from the sealed bag.  He could also see some kind of green cylinder.  He asked what it was.

64.     One of the defendants told him the bag was full of drugs.  The unknown federal agent then asked Kifer who his supplier was.

65.     Kifer denied the drugs were his.  In response, the unknown federal agent told him he was looking at a minimum of 20 years in prison.

66.     Heart racing, Kifer begged to be fingerprinted and polygraphed.  He denied over and over again that the drugs belonged to him.

67.     Kifer asked repeatedly to be drug tested.

68.     The interrogation continued for close to two hours.  Kifer continued to deny any knowledge about the drugs.

69.     During this entire time, defendants knew or reasonably should have known that no drugs had been found in Kifer's car or in his possession or control.

70.     At some point, the unknown federal agent advised Kifer that the magistrate was ready for him and began to lead Kifer out of the door of the interrogation room.

71.     The unknown federal agent and Jimmy Williams took Kifer from the interrogation room to the magistrate's office.

72.     Upon arrival, Kifer was put into a waiting room with the unknown federal agent.

73.     Kifer's father and stepmother arrived and were let into the waiting room with Kifer.   Kifer broke into tears when he saw his father.

74.     Soon after his father's arrival, and without any explanation, Josh Beam and David Spencer entered the waiting room and told Kifer the charges were being dropped and his impounded car would be released.

75.     Upon information and belief, the charges were dropped because one or more of the defendants, or some third person, disclosed that Kifer had not possessed the drugs and was being set up by Burroughs.

76.     Before releasing Kifer, the magistrate told him he was still a main suspect and he could be re-arrested as the agents would continue investigating the case.

77.     Shaken, Kifer left with his father.

78.     About a month later, Kifer received a call from a State Bureau of Investigation Agent asking to interview him.  Kifer agreed.

79.     Upon information and belief, the SBI agent informed Kifer that Burroughs had devised a plan to plant drugs in Kifer 's car, and Kifer did not have to worry about the investigation anymore.

80.     More than a year later, on April 5, 2019, Burroughs was arrested and charged with making a false police report, obstructing justice, breaking and entering a motor vehicle, possession of heroin, possession of marijuana, and possession of methamphetamine.

81.     Burroughs' cases are still pending.

82.     Unable to cope with living in North Carolina, Kifer and Vang moved from the state and now reside in Ohio.

**Damages**

83.     As a direct and foreseeable consequence of being falsely stopped, arrested and interrogated, Kifer has suffered physical injury and emotional trauma.  Kifer is under medical care for anxiety, depression and post-traumatic stress disorder.   He suffers regular anxiety attacks and has also been diagnosed with a sleeping disorder, both of which have made it difficult to maintain employment.

84.     As a direct and foreseeable consequence of being falsely arrested and interrogated, Kifer has been unable to live in North Carolina.  Kifer and Vang moved from the state in 2018 and spent months re-establishing their life in Ohio.

**CAUSES OF ACTION**

**FEDERAL CLAIMS**

**COUNT I**
**42 U.S.C. § 1983**

**DEPRIVATION OF LIBERTY AND DENIAL OF SUBSTANTIVE DUE PROCESS
IN VIOLATION OF THE 14TH AMENDMENT**

**(Against all Defendants in their individual capacities)**

85.     Ray Kifer, Jr. incorporates  paragraphs  1-84  of this Complaint as if fully restated herein  and  further  alleges:

86.     In  March  2018,  Defendants  Burroughs  and  Spencer  devised  and implemented a scheme to use their positions as law enforcement agents and their access to illegal drugs as law enforcement agents to knowingly and intentionally frame Ray Kifer with a drug crime he did not commit.

87.     Defendants Burroughs and Spencer were aided and abetted by defendants Kyle Beam, Josh Beam, Jimmy Williams and the unknown federal agent, acting knowingly and/or in reckless disregard of the truth.

88.     Defendants Burroughs, Spencer, Kyle Beam, Josh Beam, Williams and the unknown federal agent, acting in concert, and aiding and abetting one another, deprived Ray Kifer of his liberty without due process of law, and of his right to a fair criminal proceeding, by fabricating evidence implicating Kifer in a crime, planting incriminating evidence against Kifer, and falsely reporting criminal conduct by Kifer.

89.     Defendants all conspired with each other, and/or aided and abetted one another, to intentionally, deliberately and/or recklessly fabricate evidence with the intent to have Ray Kifer arrested, charged and convicted of a crime he did not commit.

90.     Defendants' conduct, as described above, shocks the conscience, contravened fundamental principles and canons of decency and fairness, and violated Ray Kifer's constitutional right to substantive due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution.

91.     Defendants' conscience-shocking misconduct in March 2018 directly and proximately caused Ray Kifer Jr.'s physical and emotional suffering that lasts to this day. It also proximately caused Kifer's decision to move from North Carolina to Ohio.

92.     Defendants knew, or reasonably should have known, that fabricating and causing the fabrication of false evidence violated Ray Kifer's constitutional right to due process and a fair criminal proceeding.

93.     Defendants knew, or reasonably should have known that fabricating and causing the fabrication of false evidence was likely to lead to a false arrest and severe

psychological anguish whether or not the conscious-shocking conduct resulted in a false conviction.

94.    Any reasonable law enforcement officer would have known — and these defendants did know — that fabricating and causing the fabrication of false evidence was improper and highly likely to lead to a false arrest and severe psychological anguish.

95.    No reasonable law enforcement officer would have engaged in the conduct set forth above or believed it to be lawful.

96.    The defendants conduct proximately caused Ray Kifer to be stopped, arrested, detained, and questioned about a crime he did not commit.

97.    The misconduct described in this Count was objectively unreasonable and was undertaken willfully, intentionally and/or in reckless disregard for Kifer's clearly established constitutional rights.

98.    Absent the defendants' misconduct, the arrest of Kifer could not and would not have occurred.

99.    The arrest of Ray Kifer was deliberately and purposefully brought about by defendants and was the obvious and intended result of their conduct.

100.    All of the foregoing acts and omissions were committed under color of state law and violated clearly established law of which any reasonable officer would have known.

101.    All of the foregoing acts and omissions were committed deliberately, intentionally, in bad-faith, and/or with reckless disregard for the rights and safety of Ray Kifer.

102.    As a direct and proximate result of defendants' deliberate, reckless, deliberately indifferent and/or bad-faith acts and omissions, Ray Kifer was deprived of his Fourteenth Amendment rights to a fair criminal proceeding and to not be deprived of his liberty without due process of law.

103.    As a direct and foreseeable consequence of being unjustly arrested, detained and interrogated, Ray Kifer has suffered emotional and psychological damages, out-of-pocket expenses, and consequential economic damages, as well as other damages to be determined at the trial of this matter.

## COUNT II

## 42 U.S.C. § 1983

## FALSE ARREST
## IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS

### (Against all Defendants in their individual capacities)

104.    Ray Kifer incorporates paragraphs 1-103 of this Complaint as if fully restated herein and further alleges:

105.    In March 2018, defendants Burroughs, Spencer, Kyle Beam, Josh Beam, Jimmy Williams and the unknown federal agent, acting individually and in concert with each other, under color of state law and within the scope of their employment as law enforcement agents, caused, instituted or participated in the arrest of Ray Kifer.

106.    The arrest of Ray Kifer was based upon evidence fabricated by one or more of the defendants, and was therefore not supported by probable cause.

107.    Defendants knew or reasonably should have known that in the absence of the fabricated evidence, probable cause did not exist to institute, advance or continue Ray Kifer's prosecution.

108. Defendants' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Ray Kifer's constitutional rights.

109. One or more of the defendants fabricated this evidence in the course and scope of their employment as law enforcement officers and under color of state law.

110. As a result of the wrongful acts of defendants, Kifer was arrested on March 7, 2018 for a drug offense and was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

111. The proceedings were finally terminated in Plaintiffs' favor on March 7, 2018, after it was discovered that Ray Kifer had been framed by defendants for the possession of illegal drugs.

112. The misconduct of defendants was objectively unreasonable and was undertaken intentionally, maliciously and/or willfully, or in reckless disregard and indifference to Kifer's clearly established constitutional rights.

113. As a direct and foreseeable consequence of being arrested, detained and interrogated, Ray Kifer has suffered emotional and psychological damages, out-of-pocket expenses, and consequential economic damages, as well as other damages to be determined at the trial of this matter.

## COUNT III

## 42 U.S.C. § 1983

## UNLAWFUL SEIZURE IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS

### (Against Defendant David Spencer in his individual capacity)

114. Ray Kifer incorporates paragraphs 1-113 of this Complaint as if fully restated herein and further alleges:

115.     On March 7, 2018, defendant Spencer stopped the car being driven by Ray Kifer under the pretext that he had been speeding.

116.     In fact, Spencer had been planning to stop Kifer's car earlier that day as a part of Burroughs plan to frame Ray Kifer with a drug offense.

117.     Prior to being stopped by Spencer, Kifer had not been speeding, and his stop by Spencer was pretextual.

118.     On March 7, 2018, Spencer did not smell the odor of marijuana coming from the vehicle.

119.     There was no reasonable basis or suspicion to stop Ray Kifer's car on March 7, 2018.

120.     Spencer's conduct in stopping Ray Kifer's car was objectively unreasonable and violated Kifer's constitutional right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

121.     The misconduct of defendant Spencer was undertaken intentionally, maliciously and/or willfully, or in reckless disregard and indifference to Kifer's clearly established constitutional rights.

122.     As a direct and foreseeable consequence of being stopped and detained, Ray Kifer has suffered emotional and psychological damages, out-of-pocket expenses, and consequential economic damages, as well as other damages to be determined at the trial of this matter.

16

## STATE COMMON LAW CLAIMS

## COUNT IV

## False Arrest

### (Against all Defendants in their individual capacities)

123.    Ray Kifer incorporates paragraphs 1-122 of this Complaint as if fully restated herein and further alleges:

124.    Any applicable governmental immunity has been waived by the Anson County Sheriff's Department purchase and maintenance of insurance or its participation in a municipal pool to cover liability for defendants' conduct.

125.    Defendants' conduct, as set forth in this Complaint, was reckless and malicious, and public officer immunity therefore does not apply to their conduct.

126.    In March 2018, defendants Burroughs, Spencer, Kyle Beam, Josh Beam, Jimmy Williams and the unknown federal agent, acting individually and in concert with each other, under color of state law and within the scope of their employment as law enforcement agents, caused, instituted or participated in the arrest of Ray Kifer.

127.    The arrest of Ray Kifer was based upon evidence fabricated by one or more of the defendants and was therefore not supported by probable cause.

128.    Defendants knew or reasonably should have known that in the absence of the fabricated evidence, probable cause did not exist to arrest Ray Kifer's.

129.    Defendants' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Ray Kifer's constitutional rights.

130.    Defendants conduct occurred in the course and scope of their employment as law enforcement officers and under color of state law.

131.     As a result of the wrongful acts of defendants, Kifer was wrongfully arrested on March 7, 2018 for a drug offense and was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

132.     The proceedings were finally terminated in Plaintiffs' favor on March 7, 2018, when the charges against him were dismissed after it was discovered that Ray Kifer had been framed for the possession of illegal drugs.

133.     The misconduct of defendants was objectively unreasonable and was undertaken intentionally, maliciously and/or willfully, or in reckless disregard and indifference to Kifer's clearly established constitutional rights.

134.     As a direct and foreseeable consequence of being arrested, detained and interrogated, Ray Kifer has suffered emotional and psychological damages, out-of-pocket expenses, and consequential economic damages, as well as other damages to be determined at the trial of this matter.

## COUNT V

## NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS

**(Against Defendants Spencer, Kyle Beam, Josh Beam
Jimmy Williams and Unknown Federal Agent in their individual capacities)**

135.     Ray Kifer incorporates paragraphs 1-134 of this Complaint as if fully restated herein and further alleges:

136.     Any applicable governmental immunity has been waived by the Anson County Sheriff's Department purchase and maintenance of insurance or its participation in a municipal pool to cover liability for defendants' conduct.

137.   Defendants' conduct, as set forth in this Complaint, was reckless and malicious as a matter of law, and public officer immunity therefore does not apply to their conduct.

138.   At the time of the events that occurred in March 2018, defendants owed Ray Kifer a duty of due care with respect to their involvement in his arrest for a drug offense.

139.   The duty of due care owed to Ray Kifer included, but was not limited to, the following duties:

   a.   To ensure that citizens were not wrongfully arrested and charged with crimes they did not commit;

   b.   To ensure that only reliable and trustworthy evidence was used in making an arrest;

   c.   To properly maintain, store, inventory and safe-keep drug evidence seized in other criminal investigations;

   d.   To conduct criminal investigations professionally and with the goal of finding the truth; and

   e.   To follow proper law enforcement procedures and the United States Constitution in conducting all criminal investigations and arrests.

140.   Defendants' conduct in March 2018 was negligent, grossly negligent and reckless, and breached their duty of due care to Ray Kifer.

141.   Defendants Spencer, Kyle Beam, Josh Beam, Jimmy Williams and Unknown Federal Agent were acting in the course and scope of their employment as law enforcement officers, and were negligent, grossly negligent and or reckless in failing to recognize that Ray Kifer was not guilty of any drug offense and was being framed for a drug offense by defendant Burroughs.

19

142.   The Anson County Sheriff's Department is liable for the actions of defendants Spencer, Kyle Beam, Josh Beam and Jimmy Williams through the doctrine of *respondeat superior*.

143.   Defendants acted with malice as a matter of law, and with reckless disregard for the rights of Ray Kifer.

144.   As a direct and foreseeable consequence of defendants' negligence, gross negligence and recklessness, Ray Kifer has suffered personal physical injury, Ray Kifer has suffered emotional and psychological damages, out-of-pocket expenses, and consequential economic damages, as well as other damages to be determined at the trial of this matter.

## COUNT VI

**INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS**

**(Against all Defendants in their individual capacities)**

145.   Plaintiff incorporates the allegations made in paragraphs 1-144 above and further alleges as follows:

146.   Defendants' acts and omissions as set forth above constituted extreme and outrageous conduct towards Ray Kifer.

147.   Defendants' acts and omissions as set forth above were intended to cause severe emotional distress to Ray Kifer or, in the alternative, evidenced a reckless indifference to the likelihood that such acts and omissions would cause severe emotional distress to Ray Kifer.

148.   As a direct and foreseeable consequence of defendants' acts and omissions, and the severe emotional distress that these acts and omissions caused, Ray

Kifer suffered damages in an amount to be determined at the trial of this matter. These damages include, but are not limited to, mental suffering, severe mental anguish, humiliation, indignities and embarrassment and degradation, as well as anxiety, depression, post-traumatic stress disorder, regular anxiety attacks, and a sleeping disorder - emotional conditions which are generally recognized and diagnosed by professionals trained to do so as well as other damages to be determined at the trial of this matter

## PUNITIVE DAMAGES

149.    Ray Kifer incorporates each paragraph of this Complaint as if fully restated herein and further alleges:

150.    The acts of defendants alleged above were willful and wanton as a matter of law and evidenced a reckless disregard for and indifference to the rights and safety of the public, including Ray Kifer, who as a result, was stopped, arrested, detained and questioned for a crime he did not commit.

151.    The willful and wanton acts alleged above proximately caused the injuries suffered by Ray Kifer. Mr. Kifer is therefore entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ray Kifer respectfully requests that the Court enter judgment in his favor against defendants on all counts of the Complaint, and award relief as follows:

1.    Compensatory damages against the defendants, jointly and severally, in an amount to be determined at trial;

2.      Punitive damages against the individual defendants, jointly and severally, in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by defendants and other officials and law enforcement officers in the future;

3.      Pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1920, against all defendants, jointly and severally, and

4.      Any and all other relief to which he may be entitled.

Respectfully submitted, this 26TH day of January, 2021.

/s/ Sonya Pfeiffer
Sonya Pfeiffer
NC Bar No.: 37300
Joseph P. Lattimore
NC Bar No.: 46910
David S. Rudolf
NC Bar No.: 8578
**Rudolf Widenhouse**
225 East Worthington Avenue
Suite 100
Charlotte, NC 28203
Telephone:  (704) 333-9945
Fax:  (704) 335-0224
dsrudolf@rudolfwidenhouse.com
spfeiffer@rudolfwidenhouse.com
jlattimore@rudolfwidenhouse.com