# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:21-CV-039-DCK

| | |
|---|---|
| **RAY KIFER, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     <u>ORDER</u> |
| | ) |
| **HARRY B. CROW, JR., as** | ) |
| **Administrator of the Estate of LANDRIC** | ) |
| **REID, ANSON COUNTY, DAVID** | ) |
| **SCOTT BURROUGHS, DAVID** | ) |
| **SPENCER, KYLE BEAM, JOSH BEAM,** | ) |
| **and JIMMY WILLIAMS,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Defendants "Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document No. 51) filed January 10, 2023. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. The undersigned held a hearing on the pending motion on August 3, 2023. Having carefully considered the motion, the record, the arguments, the evidence presented at the hearing, and applicable authority, the undersigned will <u>grant</u> the motion in part and <u>deny</u> the motion in part.

## I. BACKGROUND

Plaintiff Ray Kifer, Jr. ("Plaintiff" or "Kifer") initiated this action with the filing of a "Complaint And Demand For Jury Trial" (Document No. 1). Plaintiff later filed a "First Amended Complaint And Demand For Jury Trial" (Document No. 36) on October 4, 2022 ("Amended Complaint").

Plaintiff's Amended Complaint alleges that a former deputy of the Anson County Sheriff's Office, Defendant David Scott Burroughs ("Burroughs"), framed him "for a felony drug offense that he did not commit." (Document No. 36, p. 1). Plaintiff alleges that Burroughs was motivated by his jealousy – only a short time after Burroughs' ex-girlfriend, Yajyuam Lela Vang ("Vang") broke up with him, she began to date Plaintiff. Id. at pp. 2, 4. In his Amended Complaint, Plaintiff details Burroughs' alleged obsession with his break-up with Vang – "shar[ing] his despair widely within the Sheriff's Department." Id. at p. 5. Apparently, Burroughs' obsession extended to Vang's new boyfriend, Kifer. Id. "Burroughs would repeatedly pull up Kifer's photograph on the North Carolina Offender Database, CJLEADS…while on duty." Id. His obsession with Kifer and Vang's relationship became so serious, allegedly, that Burroughs' supervisor "ordered Burroughs not to go around the area where Lela Vang lived." Id. at p. 6. Nonetheless, "Burroughs [continued to do] surveillance on Vang and Kifer while on duty, in his patrol car." Id.

In March 2018, Burroughs allegedly enacted his plan to frame Kifer for felony drug possession. Burroughs apparently "began to refer to Kifer as a 'drug dealer' in conversations with his colleagues at the Anson County Sheriff's Department," despite the fact that nobody in the Sheriff's Department "had ever heard of Kifer being involved in drugs." Id. at p. 7. On March 4, 2018, he called his colleague asking "if he could use [his] lock-out kit." Id. That same day, Burroughs allegedly "contacted James Sims, a local Anson County man whom Burroughs knew was connected to the local drug trade, and paid Sims to buy heroin, marijuana and methamphetamine" in addition to a "scale, grinder and baggies." Id. at p. 8. The next morning, on March 5, 2018, Burroughs drove to Vang's home where Kifer also lived, "walked up to Kifer's car, broke into the trunk, and planted the baggie of drugs and drug paraphernalia under the trunk's tire storage compartment." Id.

"On or about March 6, 2018, Burroughs told Deputy Darius Ellison that Kifer would be driving through a specific part of Anson County at a specific time and there would be drugs in the car[;]…[he asked the officer] to stop the car and arrest Kifer for the drugs." Id. The officer was allegedly worried that Burroughs was setting Kifer up and suggested he call a different county's police department. Id. at pp. 8-9. The Polkton Police Department refused Burroughs' request. Id. at p. 9. Burroughs continued his search for an officer willing to stop the car, calling another officer with the Anson County Sheriff's Department and relaying "specific information about the location of the drugs and the time the car would be driving along Ansonville-Polkton Road." Id. The officer "did not attempt to stop Kifer's car because the information was 'obviously fishy.'" Id. at p. 10. Instead, the officer reported the information to Defendant Jimmy Williams ("Williams"), "who was one of two detectives in the narcotics department at the Anson County Sheriff's Department." Id. Williams "was not aware of David Burroughs ever working with, or having, any confidential informants." Id. Furthermore, he also "was not aware of David Burroughs ever working any drug investigations," and he "did not know Kifer to ever be involved in drugs or illegal activity of any kind." Id. Williams believed that this "sounded like a 'set up,'" and told the officer who relayed the information to him not to stop the car. Id. at p. 11. Nonetheless, he did not "report the situation to his supervisor…or to the Sheriff." Id.

The first officer to whom Burroughs had pleaded for help in stopping Kifer's car, Darius Ellison, "wrote a note containing the information he had received from Burroughs the day before," then placed the note in [Defendant] Josh Beam's mailbox. Id. Still, the fact that Ellison had received the information from Burroughs was not revealed in the note. Id. "Josh Beam was the other drug detective in Anson County and was Jimmy Williams' partner." Id. Josh Beam and

3

Williams conferred and ordered "Ellison not to pursue the tip." Id. at p. 12. Neither Josh Beam nor Williams, however, reported their concerns to their supervisor nor to the Sheriff. Id.

Given the continued refusal of the officers that he had called so far to stop Kifer's car, Burroughs "called Sergeant Kyle Beam and told him about the alleged tip." Id. at p. 14. Defendant Kyle Beam "refused to act on the tip himself [but] did not alert his supervisor or the Sheriff about what he had been told by Burroughs." Id. Burroughs continued to try to reach someone in the Anson County Sheriff's Department who would stop Kifer's car. He called David Spencer, allegedly detailing "the car model and license plate of Kifer's car," the time at which Kifer would be driving on Ansonville-Polkton Road, and "specifically where he would find drugs in the trunk of Kifer's car." Id. Apparently, "[f]or Spencer, what Burroughs told him 'threw up red flags.'" Id. at p. 15. Nonetheless, Spencer drove to Ansonville-Polkton Road, encountering Kifer's car. Id. at p. 16. Spencer initiated a traffic stop, telling Kifer that the reason for the stop was speeding and crossing the center line. Id. Kifer denies engaging in either of these traffic infractions in his Amended Complaint. Id. at p. 32. Spencer "told Kifer he smelled an odor of marijuana coming from the vehicle," to which Kifer replied such a possibility was "impossible." Id. at p. 17. "Spencer [then] asked for consent to search the vehicle," and "Kifer agreed." Id. Spencer called Kyle Beam to inform him that he'd made the stop, and Kyle Beam "went to assist Spencer." Id.

Upon arrival, Kyle Beam and Spencer began searching the trunk of Kifer's car. Id. Kyle Beam "testified that he did *not* smell the odor of marijuana coming from the car." Id. at p. 18. "Spencer pointed to a package under the spare tire storage compartment and said to [Kyle Beam] in a confirmatory manner, 'there it is.'" Id. According to Plaintiff's Amended Complaint, "[d]espite 'red flags' about the legitimacy of Burroughs' extremely detailed tip, the well-known relationship between Burroughs and Lela Vang, Burroughs' outrage at Lela's relationship with

4

Kifer, and the drug packet that was 'too organized,' Spencer and Beam decided to arrest Kifer." Id.

Meanwhile, when the broadcast of Kifer's arrest was heard via the Anson County dispatch system, Defendants Williams and Josh Beam were riding in the car with a federal agent with the Department of Homeland Security, Jose Manolito Dugger ("Dugger"). Id. at p. 19. According to Plaintiff's Complaint, "[a]s soon as Jimmy Williams heard that the car has been stopped, he said 'Oh, shit.'" Id. Neither Williams nor Josh Beam told their supervisor or the Sheriff "before heading to the scene," nor did they inform Dugger of the background context to the situation. Id. Kifer was transported "in handcuffs…[in] the back of a deputy vehicle," "[f]rightened and confused." Id. at p. 21. "Spencer wrote a citation for crossing the center line (not for speeding) and filed a report on the stop and search of the car." Id.

Federal Agent Dugger and Defendants Williams and Josh Beam interrogated Kifer at the police station. Id. at pp. 22-23. Kifer repeatedly denied any involvement in drug activity when questioned, and apparently "at one point suggested he might have been set up by David Burroughs." Id. at p. 23. Dugger then "confronted Kifer with the bag [found in the trunk of Kifer's car with marijuana, heroin, and cocaine," and Kifer "repeated his denial and said he did not even know what the items in the bag were used for, or what they were at all." Id. at p. 24. Josh Beam then informed Dugger "that the source of the tip was Burroughs," and Dugger then said "that an investigation of the entire incident should be launched by an independent agency such as the North Carolina State Bureau of Investigation ('SBI') or the Federal Bureau of Investigation ('FBI')." Id. at p. 24. Dugger refused when Defendants Josh Beam and Williams asked him if he could do the investigation. Id.

Following the interrogation, "based upon the recommendation of Agent Dugger, a decision was made to release Kifer while an investigation of the entire incident was conducted." Id. at p. 25. Defendants Josh Beam and Spencer "told Kifer the charges were being dropped and his impounded car would be released." Id. Later, an individual at the SBI informed Kifer that it was Burroughs who planted the drugs in Kifer's car. Id. at p. 26.

Initially, "Sheriff Reid kept the investigation [of the incident] internal." Id. During the internal investigation, "[a]fter initially denying any wrongdoing, Burroughs eventually told [the internal lieutenant at the Anson County Sheriff's Department leading the investigation], Williams, and Josh Beam that he planted the drugs, although he lied about the specific details." Id. at p. 27. At that point, Sheriff Reid decided that the investigation should be conducted by the SBI. Id. Furthermore, he fired David Burroughs but took no action against any of the other deputies. Id. at p. 28. Burroughs "was arrested and charged with making a false police report, obstructing justice, breaking and entering a motor vehicle, possession of heroin, possession of marijuana, and possession of methamphetamine." Id. According to Plaintiff's supplemental brief to the summary judgment motion, the criminal case in state court against Burroughs concluded and he was found guilty of obstruction of justice and possession of heroin. (Document No. 67, p. 1).

Kifer brings eight claims against Defendants: (1) fabrication of evidence pursuant to 42 U.S.C. § 1983 ("§ 1983") in violation of Plaintiff's due process rights under the Fourteenth Amendment against Defendants Burroughs, Spencer, and Kyle Beam; (2) unlawful stop and search pursuant to § 1983 in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments against Defendants Spencer and Kyle Beam; (3) unlawful arrest pursuant to § 1983 in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments against Defendants Burroughs, Spencer, Williams, Kyle Beam, and Josh Beam; (4) failure to intervene pursuant to §

6

1983 in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments against Defendants Spencer, Williams, Kyle Beam, and Josh Beam;  (5) a Monell claim pursuant to § 1983 against Anson County;   (6) a state common law claim for false arrest against Defendants Burroughs, Spencer, Williams, Kyle Beam, and Josh Beam;  (7) a state common law claim for negligence, gross negligence, and recklessness against Defendants Reid, Spencer, Williams, Kyle Beam, and Josh Beam;  and (8) a state common law claim for intentional or reckless infliction of emotional distress against Defendants Reid, Spencer, Williams, Kyle Beam, and Josh Beam.  See (Document No. 36).

Defendants "Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document No. 51) was filed on January 10, 2023.[1]   "Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment" (Document No. 57) was filed February 10, 2023.  The "Reply To Plaintiff's Response To Defendants Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document No. 58) was filed February 24, 2023.

Following the completion of briefing on the summary judgment motion, "Plaintiff's Motion To Re-Open Discovery Or, In The Alternative, Leave To Supplement Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment" (Document No. 60) was filed on May 16, 2023.  The Court granted Plaintiff's motion on June 8, 2023, permitting Plaintiff to take Defendant Burroughs' deposition and for both sides to thereafter file supplemental briefs to the summary judgment motion.  See (Document No. 65).

---

[1] Notably, Defendant Burroughs has not moved for summary judgment.

On July 10, 2023, Plaintiff filed his "Supplement To Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment" (Document No. 67). "Defendants David Spencer, Kyle Beam, Josh Beam, Jimmy Williams, Estate Of Landric Reid, And Anson County's Response To Plaintiff's Supplemental Brief" (Document No. 68) was filed July 17, 2023.[2]

The pending motion is now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading,

---

[2] At the outset, the undersigned highlights that it will not address arguments in the supplemental briefs about whether an adverse inference is appropriately drawn against Defendants in light of Burroughs' invocation of the Fifth Amendment at his deposition for this case. Such issue has relevance to jury instructions only; at this stage, it is premature. See United States v. Mallory, 988 F.3d 730, 739-40 (4th Cir. 2021).

but ... must set forth specific facts showing there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. <u>Id.</u>

## III. DISCUSSION

### A. Fabrication of Evidence (§ 1983)

Plaintiff alleges a fabrication of evidence count under 42 U.S.C. § 1983, contending that he was denied due process in violation of the Fourteenth Amendment against Defendants Burroughs, Spencer, and Kyle Beam. (Document No. 36, p. 29). Plaintiff claims that "Defendant Burroughs devised and implemented a scheme to use his position as a law enforcement officer to knowingly and intentionally frame Ray Kifer with a drug crime he did not commit." <u>Id.</u> As to moving Defendants Spencer and Kyle Beam, Plaintiff alleges that they "aided and abetted" Burroughs and "conspired with each other" to "deprive[] Ray Kifer of his liberty without due process of law, and of his right to a fair criminal proceeding, by fabricating evidence implicating Kifer in a crime, planting incriminating evidence against Kifer, and falsely reporting criminal conduct by Kifer." <u>Id.</u> at pp. 29-30.

According to the Fourth Circuit, the right alleged in this claim is "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." <u>Washington v. Wilmore</u>, 407 F.3d 274, 282 (4th Cir. 2005) (quoting <u>Zahrey v. Coffey</u>, 221 F.3d 342, 349 (2d Cir. 2000)). "This claim is rooted in substantive due process." <u>White v. Wright</u>, 150 F. App'x 193, 198 (4th Cir. 2005). Substantive due process protects against "conscience-shocking behavior." <u>Id.</u> (internal quotations and citations omitted).

9

And, "in order…to survive summary judgment, [it must be shown] that [Defendants Spencer and Kyle Beam] deliberately fabricated or falsified information." Id. at 199. "[U]nsupported allegations and speculation of fabrication" are insufficient to create a genuine issue of fact. Id.

Here, the undersigned finds that there is simply no genuine issue of material fact about *who* is alleged to have deliberately fabricated or falsified evidence – i.e., planted drugs in Plaintiff's car. There is no dispute that the individual alleged to have engaged in such conduct is Burroughs. Although Plaintiff passionately argues that Spencer and Kyle Beam "knew, or reasonably should have known, that Burroughs was attempting to frame Kifer with possession of dangerous drugs," that kind of assertion simply does not meet the standard for a fabrication of evidence claim. (Document No. 57, p. 15). As Defendants point out, this is not a conspiracy claim.[3] (Document No. 58, p. 2). The right protects against "the *deliberate* use of evidence *fabricated by* or *known to be false* to a law enforcement official." White, 150 F. App'x at 198. There simply isn't a dispute of fact about what Spencer and Kyle Beam knew, and, did *not* know – anything else that Plaintiff points to, such as "red flags" from which someone *might* infer the possibility of fabrication of evidence – is simply "speculation." Id. at 199; (Document No. 57, p. 15).

An alternative reason supports granting summary judgment on Plaintiff's fabrication of evidence claim. The Fourth Circuit has stated that "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication." Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014). Aside from Plaintiff's inability to prove that Spencer and Kyle Beam directly fabricated evidence, there is also a separate problem

---

[3] The undersigned does not express an opinion about whether, based on the evidence already proven, a civil conspiracy claim would be successful.

10

fatal to this claim. Plaintiff cannot show that he was deprived of liberty such that this claim can proceed. In addition to the Fourth Circuit's language in Massey indicating that conviction and incarceration would successfully show deprivation of liberty, there is also precedent from district courts within the Fourth Circuit – including in the Western District of North Carolina – supporting the notion that deprivation of liberty requires much more than what occurred to Plaintiff here. Indeed, Plaintiff was never even formally charged, by his own admission in the Amended Complaint. (Document No. 36, p. 25) (the same day of the events in question, a magistrate "advised Kifer there was an ongoing investigation, but *at this point* Kifer was not going to be charged with anything"). In Caraway v. City of Pineville, the court found that even though the plaintiff was arrested, charged, and incarcerated before the prosecutor ultimately "dismissed all charges" before trial, such circumstances still did not "show the requisite deprivation of liberty." 3:21-CV-454-FDW-DSC, 2022 WL 16700687, at *14 (W.D.N.C. Nov. 3, 2022), *appeal filed on other grounds*. The Western District of Virginia granted a summary judgment motion on a fabrication of evidence claim for the same reason in Allen v. Deel: "it is undisputed that [plaintiff] was never charged for unlawful possession, let alone convicted or incarcerated for that (or any) offense…his Fourteenth Amendment claim against Deel for fabrication of evidence [therefore] fails as a matter of law." Order, Allen v. Deel, No. 4:20-CV-038-TTC-RSB (W.D. Va. Sept. 8, 2021), ECF No. 55. Although the undersigned recognizes the egregiousness of the facts here, legally, the fabrication of evidence claim cannot proceed.

While Spencer and Kyle Beam may ultimately face liability for poor decision-making and their respective conduct, fabrication of evidence is not the vehicle for assertion of liability against them. The undersigned finds that summary judgment should be granted in favor of Defendants Spencer and Kyle Beam on the fabrication of evidence claim.

11

### B. Unlawful Stop and Search (§ 1983)

Plaintiff's second claim is an unlawful stop and search claim pursuant to 42 U.S.C. § 1983, contending that David Spencer and Kyle Beam violated his rights under the Fourth and Fourteenth Amendments. (Document No. 36, p. 32). Under the Fourth Amendment, there is a right against "unreasonable searches and seizures." U.S. CONST. amend. IV. Traffic stops are considered seizures under the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809 (1996). To be considered reasonable, an automobile stop must be supported by "probable cause to believe that a traffic violation has occurred." Id. at 810.

The undersigned will bifurcate the analysis on the stop and the search. At the outset, the undersigned concludes that there is a genuine issue of material fact about whether the stop was supported by probable cause. There is conflicting testimony about whether Plaintiff was speeding, as Spencer contends that he was speeding, and Plaintiff at first suggests that he was potentially speeding but later retracted that assertion. (Document No. 52-4, p. 12); (Document No. 52-9, pp. 6, 23). Furthermore, while Defendant Spencer issued Kifer a citation for crossing the center line, Kifer denies that he actually crossed the center line. (Document No. 52-4, p. 13); (Document No. 52-9, p. 7). Furthermore, in evaluating whether a traffic stop was reasonable, courts must "consider the totality of the circumstances known to the officer at the time of the stop." United States v. Williams, 85 F. App'x 341, 346 (4th Cir. 2004). Given that there is genuine dispute of material fact about whether, "viewed objectively," a traffic stop supported by probable cause occurred, the

12

undersigned will deny summary judgment as to the unlawful stop claim.[4]  See Whren, 517 U.S. at 813.

Regarding the unlawful search, however, the undersigned finds that there is no genuine dispute of *material* fact about whether the search was lawful.  Under Fourth Amendment law, it is "well settled that one of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  In order to be constitutionally justifiable, a search pursuant to consent must stem from "consent [that] was in fact voluntarily given, and not the result of duress or coercion, express or implied."  Id. at 248.  According to Plaintiff's deposition testimony, he said "[y]es, sir," in response to Spencer's question about whether he could search his vehicle. (Document No. 52-9, p. 8).  While Spencer apparently stated that he could smell marijuana before asking the question, this is not sufficient evidence to create a genuine issue of material fact about whether Kifer's consent was voluntary.  Id.  The Fourth Circuit has held that consent was voluntary even in the face of more egregious circumstances suggesting more coercion than any present in this case.  See United States v. Boone, 245 F.3d 352, 363 (4th Cir. 2001) (finding that consent was voluntarily given even where individual was handcuffed).  And, Plaintiff's argument that if there is any chance that the stop was unlawful, the search must also be invalidated as tainted is misplaced.  The Court cannot find "any Fourth Circuit decision that has held that the fruit of the

---

[4] Furthermore, it is for a jury to determine whether Defendants Spencer and Kyle Beam engaged in a constitutional violation that would preclude their entitlement to qualified immunity.  This is because there are "genuine disputes of material fact and [] the resolution of such disputes at trial [i]s necessary before the legal issue of [] entitlement to qualified immunity [may] be determined."  Blue Ridge Public Safety, Inc. v. Ashe, 712 F. Supp. 2d 440, 457 (W.D.N.C. 2010).  "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Here, it is not clear whether a constitutional violation occurred, and thus, the resolution of the factual question requires that this issue proceed to a jury.

13

poisonous tree doctrine applies in a § 1983 claim." White v. City of Greensboro, 608 F. Supp. 3d 248, 264 (M.D.N.C. 2022) (collecting cases in which the Fourth Circuit affirmed decisions that did *not* apply the fruit of the poisonous tree doctrine in § 1983 civil cases).Therefore, as to that part of Plaintiff's third count (the search), the undersigned will grant summary judgment in favor of Defendants.

### C. Unlawful Arrest (§ 1983)

Plaintiff alleges an unlawful arrest claim pursuant to 42 U.S.C. § 1983 in violation of his Fourth and Fourteenth Amendment rights against Defendants Burroughs, Spencer, Kyle Beam, Josh Beam, and Jimmy Williams. As stated, Burroughs has not joined in Defendants' summary judgment motion, and as such, no analysis will be done with respect to the claim against him.

"Police officers may arrest a suspect without a warrant…if they have probable cause to believe the suspect had committed or was committing a felony." United States v. Fisher, 1996 WL 558366, at *2 (4th Cir. Oct. 2, 1996) (citing Draper v. United States, 358 U.S. 307, 310-11 (1959)). Probable cause takes into account "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [that] were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Fisher, 1996 WL 558366, at *2 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

The undersigned finds that there are genuine issues of material fact precluding the entry of summary judgment on Plaintiff's unlawful arrest claim. Simply put, Defendants' argument is vastly oversimplified – Defendants Spencer, Kyle Beam, Josh Beam, and Williams knew significantly more than merely the facts that Kifer was driving a car with drugs in the trunk. See (Document No. 52, p. 16). First, it was well-known around the Anson County Sheriff's Department how upset Burroughs was about his break-up with Vang and Vang's new relationship

14

with Kifer.  See (Document No. 57-3, p. 23);  (Document No. 57-4, p. 6);  (Document No. 57-5, p. 18).  Spencer was told directly by Burroughs that a specific car would be traveling down Ansonville-Polkton Road at a specific time carrying drugs in the trunk, and that it was very possible that Lela Vang and her boyfriend would be in the car.  (Document No. 57-14, p. 2).  At that point, once Spencer learned that "the car belonged to Lela's boyfriend, it threw up red flags." Id.  Burroughs also called Kyle Beam to inform him that someone would be transporting narcotics through Anson County, and that he learned this information from a confidential informant. (Document No. 57-16, p. 10).  Kyle Beam was also told that the car would be driven by Kifer.  Id. at p. 13.  Kyle Beam did not know Burroughs to have any confidential informants because Burroughs wasn't involved in drug investigations.  Id. at p. 10.  Josh Beam and Jimmy Williams knew the same information that Spencer and Kyle Beam knew, however, they were informed of the information from other deputies.  (Document No. 57-3, p. 22);  (Document No. 57-9, p. 23).

Even despite all of this knowledge – that the information supplied by Burroughs was of questionable specificity and that it involved Burroughs' ex-girlfriend and her new boyfriend – Spencer, Kyle Beam, Josh Beam, and Williams participated in Kifer's arrest.  Spencer and Kyle Beam actually arrested Plaintiff;  Josh Beam and Williams continued to effectuate the arrest by transporting Plaintiff in their patrol car to the police station for interrogation.  See (Document No. 57-3, pp. 32-33); (Document No. 57-16, pp. 16-17).  Of course, taking into account all of the facts and circumstances surrounding what these deputies knew at the time of the arrest, the case is much less straightforward than Defendants make it out to be.  Given the outstanding genuine issues of

15

material fact surround whether probable cause existed to arrest Kifer, the undersigned will deny summary judgment on the unlawful arrest claim pursuant to § 1983.[5]

### D. Failure to Intervene (§ 1983)

Plaintiff's fourth claim alleges failure to intervene pursuant to 42 U.S.C. § 1983 in violation of his Fourth and Fourteenth Amendment rights against Defendants Spencer, Kyle Beam, Josh Beam, and Williams.

Liability for failure to intervene under § 1983 – also known as bystander liability – attaches when an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir. 2002). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." Id. at 204, n.24. Regarding the first prong, a bystander must have "specific knowledge" of the relevant conduct. Id.

The undersigned finds that the facts on this count are different for Spencer and Kyle Beam than they are for Josh Beam and Williams. Indeed, Plaintiff's argument as to Spencer and Kyle Beam is short and conclusory. In his brief, Plaintiff has a concise one-paragraph argument about how the failure to intervene claim against Spencer and Kyle Beam should proceed to trial because they "actively assist[ed] Burrough[s] in achieving his illegal goal…rather than intervening to protect Kifer's constitutional rights." (Document No. 57, p. 19). This is insufficient to demonstrate that there is a genuine dispute of material fact on the failure to intervene claim with

---

[5] As with the unlawful stop claim, a determination of qualified immunity cannot be made at this time. See supra p. 11, n.2. The jury will have to determine whether a constitutional violation occurred – that is, whether Kifer was arrested without probable cause – before the qualified immunity issue can be decided.

respect to these two defendants. Indeed, it is not clear *what* conduct on the part of Burroughs that Plaintiff argues Spencer and Kyle Beam failed to intervene to protect against. Was it Burroughs' alleged planting of the drugs? There is not sufficient evidence to create a genuine dispute of material fact that Spencer and Kyle Beam had the requisite "specific knowledge" of Burroughs' alleged planting of the drugs to hold them liable on this count. The undersigned will therefore grant summary judgment as to Plaintiff's failure to intervene claim against Defendants Spencer and Kyle Beam.

The analysis is different, however, for Defendants Josh Beam and Williams. Josh Beam and Jimmy Williams were not present when Spencer and Kyle Beam conducted the traffic stop on Kifer's vehicle. However, they heard about it while they were together in the car with federal agent Dugger. (Document No. 57-3, p. 30). Upon hearing via the radio that Kifer's car had been stopped, Defendant Williams said, "[o]h, shit." Id. at p. 31. Immediately thereafter, Josh Beam and Williams headed to the scene. Id. at p. 32. Kifer was in handcuffs upon their arrival – at this moment, despite Jimmy Williams expressed concern that he "didn't know [] if it was a legit stop" – Williams and Josh Beam *continued* to proceed as if the arrest was entirely lawful, placing Kifer in the back of their patrol car. Id. at pp. 31-32. Even though they had told another deputy not to stop the car on account of their suspicions that "the information was too good to be true," Josh Beam and Williams failed to act upon their concerns when they arrived after Kifer was arrested. (Document No. 57-9, p. 31). The undersigned thus finds that there is a genuine dispute of material fact as to whether they had sufficiently specific knowledge to warrant liability on Plaintiff's failure

to intervene claim.  Thus, summary judgment on Plaintiff's failure to intervene claim against Defendants Josh Beam and Williams will be denied.[6]

### E. *Monell* Claim Against Anson County

Plaintiff's fifth claim asserts a <u>Monell</u> claim pursuant to 42 U.S.C. § 1983 against Anson County.  This claim arises out of the following facts: when "Sheriff Landric Reid became Sheriff of Anson County in 2015," he "adopted the written policies and procedures governing the conduct of Anson County Sheriff Department Law Enforcement Officers performing law enforcement functions on behalf of the county that had previously existed under Sheriff Allen."  (Document No. 36, p. 38).  Prior to Sheriff Reid, there were other elected Sheriffs that "required all law enforcement officers to read the Anson County Policy and Procedure Manual, then sign an affirmation that they had read and understood the policies and procedures."  <u>Id.</u>  According to Plaintiff, this manual "constituted the official policy of Anson County."  <u>Id.</u>  However, when Sheriff Reid took office, he "did not require the Defendants" to read the manual and sign an affirmation so attesting.  <u>Id.</u> at p. 39.  "Between 2014 and 2018, the Anson County Policy and Procedure Manual was only available in the office of Sheriff Landric Reid."  <u>Id.</u> at p. 39.  During Sheriff Reid's tenure in office, "there was no yearly training on the Anson County Policy and Procedure Manual," "[t]here was no mandatory training on ethics," and "[t]here was no regular training on how to respond if an Anson County Deputy Sheriff suspected wrongdoing by another Anson County officer."  <u>Id.</u>  Plaintiff contends that had there been appropriate training, "then all of the defendants in this matter would have been familiar" with the section of the manual that

---

[6] As with the previous § 1983 claims, a determination of qualified immunity cannot be made at this time.  <u>See</u> <u>supra</u> pp. 11, n.2, 14, n.3.  The jury will have to determine whether a constitutional violation occurred – that is, whether Josh Beam and Williams failed to intervene to protect Kifer against unlawful arrest.

18

"imposed *a duty* upon *all employees* of the office to report suspected or known violations of laws, ordinances, rules and directives."  Id.

In Monell v. Dep't of Social Services of City of New York, the Supreme Court established that local governments could be held responsible under § 1983 for constitutional violations caused by their own "policy or custom."  436 U.S. 658, 694 (1978).  To successfully prove a Monell claim, "four theories can be pursued to prove an unlawful custom, policy, or practice violates section 1983":

> (1) through an express policy, such as a written ordinance or regulation;  (2) through the decisions of a person with final policymaking authority;  (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens";  or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Bailey v. Campbell, 5:22-CV-052-KDB-DSC, 2022 WL 16849126, at *2 (W.D.N.C. Nov. 10, 2022) (internal citations omitted).

Defendants contend that before even reaching analysis on whether Plaintiff has successfully proven a Monell claim, the Court must consider whether Anson County is a proper Defendant.  Defendants argue that the Sheriff, rather than Anson County, is the proper Defendant to be sued under a Monell theory of liability.  See (Document No. 52, pp. 21-23).  Citing Parker v. Bladen County, Defendants contend that "[t]he sheriff, not the county, has final policymaking authority over the personnel decisions in his office."  (Document No. 52, p. 22) (citing N.C. Gen. Stat. § 153A-103;  583 F. Supp. 2d 736 (E.D.N.C. 2008)).  In Parker, the Eastern District of North Carolina stated that "[a] county may only be held liable for acts for which the county has final policymaking authority."  583 F. Supp. 2d at 739 (quoting Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000)).  And, state law determines the allocation of final policymaking authority.

19

Parker, 583 F. Supp. 2d at 739. "Under North Carolina law, sheriffs have substantial independence from county government." Id. Indeed, under North Carolina law, "sheriffs (not counties) [have] 'the exclusive right to hire, discharge, and supervise the employees in [their] office[s].'" White v. Vance Cty. Sheriff, 2023 WL 2263018, at *2 (4th Cir. Feb. 28, 2023), *petition for cert. docketed*. In 2016, the North Carolina Supreme Court clarified the issue, specifically holding that "a sheriff's office is not a program or department of a county and [affirmed] the consistent holdings of the Court of Appeals that a deputy sheriff or employee of a sheriff's office is not a county employee." Young v. Bailey, 781 S.E.2d 277, 280 (N.C. 2016).

Plaintiff, on the other hand, defends his choice to sue Anson County, contending that the Wilcoxson case controls the issue here, and that "it is the elected Sheriff who is the final policymaker for law enforcement matters in a county." (Document No. 57, p. 23) (citing Wilcoxson v. Buncombe Cty., 129 F. Supp. 3d 308 (W.D.N.C. 2014)). Plaintiff argues that "Defendants cite irrelevant cases that pre-date *Wilcoxson* or that deal with personnel matters, not law enforcement policies." (Document No. 57, p. 23). Respectfully, the undersigned finds this statement to be incorrect. First, as cited in the previous paragraph, the North Carolina Supreme Court in 2016—post-Wilcoxson that was decided in 2014—articulated the distinction between a sheriff's department and a county, finding that "a county government lacks…supervisory…authority over deputy sheriffs." See Young, 781 S.E.2d at 280. Second, the approach of distinguishing between personnel matters and law enforcement matters (which Plaintiff argued at the hearing was important) for purposes of determining which entity is the proper defendant is a minority approach. To this point, the undersigned recognizes that there is another case from the Western District of North Carolina affirming the Wilcoxson reasoning. See Moran v. Polk Cty., 1:18-CV-300-MR-WCM, 2019 WL 5297027, at *7-*9 (W.D.N.C. Sept. 3,

20

2019), *adopted by* 2019 WL 4567548 (W.D.N.C. Sept. 20, 2019). Nonetheless, considering that other courts having considered the issue have declined to delineate a clear distinction between personnel matters (for which Plaintiff argues the sheriff would be liable) and law enforcement matters (for which Plaintiff argues the county would be liable), the undersigned will adopt the majority approach here and decline to follow Wilcoxson. See White, 2023 WL 2263018, at *2; Blackwell v. McFadden, 3:22-CV-167-RJC-DCK, 2023 WL 4731354 (W.D.N.C. June 15, 2023); Finch v. Wilson Cty., 2020 WL 6532828, at *4 (E.D.N.C. Nov. 5, 2020); Parker, 583 F. Supp. 2d 736; Young, 781 S.E.2d 277.

Furthermore, even if the undersigned were to follow the Plaintiff's desired approach – that is, distinguishing between law enforcement matters and personnel matters such that Young was not followed in this case and Wilcoxson's holding that the county is appropriately sued under Monell was followed – the result would be the same. Here, the situation is not like the circumstances the court in Wilcoxson was considering. In Wilcoxson, the Plaintiff did not sue under a theory of *respondeat superior* but rather brought a "direct liability action" against Buncombe County. 129 F. Supp. 3d at 315. Here, though, deposition testimony reveals that Sheriff Reid unilaterally made the decision not to train his subordinates on written Anson County policies that required reporting of official misconduct. See (Document No. 57-21, p. 47). While Plaintiff attempts to cabin those allegations into a failure to train theory under Monell against the County, how could Anson County properly be held liable for Sheriff Reid's actions when there were written Anson County policies in the relevant manual on which Sheriff Reid alone simply failed to hold trainings? Again, although the undersigned rejects Plaintiff's proposed approach of distinguishing between personnel and law enforcement matters for determining the proper defendant for Monell purposes, even adopting that approach, the undersigned would still find that

21

the Sheriff is the proper defendant. This kind of failure to train could be more properly classified as a personnel failure, given that Sheriff Reid in essence failed to supervise his deputy sheriffs. See Young, 781 S.E.2d at 280 ("a county government lacks…supervisory…authority over deputy sheriffs").

Respectfully, the undersigned will grant Defendant Anson County summary judgment on Plaintiff's Monell claim, as the proper defendant is the Sheriff.[7]

### F.  False Arrest – State Common Law Claim

Plaintiff's sixth claim is for false arrest under state common law against Defendants Burroughs, Spencer, Kyle Beam, Josh Beam, and Williams. The analysis on the state common law claim for false arrest mirrors that of the federal unlawful arrest claim under § 1983. Given that there are genuine issues of material fact about whether Kifer's arrest was made with probable cause, the undersigned will similarly deny summary judgment as to Plaintiff's false arrest claim under state common law against Spencer, Kyle Beam, Josh Beam, and Williams. See Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 815 (E.D.N.C. 2015) (denying summary judgment on false imprisonment claim because summary judgment was denied on § 1983 claim for false arrest).[8]

---

[7] Plaintiff attempts to argue that even if the proper party for the Monell claim were the Sheriff, it is inconsequential that Anson County was sued here because "[t]he County funds the Anson County Sheriff's Department," and "[a] verdict against the Sheriff's Department would therefore have to be paid from funds allocated by the County to the Sheriff's Department." (Document No. 57, p. 22, n.30). This argument was contemplated and rejected by the North Carolina Supreme Court in the Young case, and therefore, the undersigned declines to consider it here. See Young, 781 S.E.2d at 280 ("[b]ecause a sheriff's office is not a program or department of a county, the fact that the sheriff's office receives funds therefrom is of no moment").

[8] Any argument that Plaintiff attempts to make that Defendants are entitled to public official immunity on the common law false arrest claim is premature. "Under North Carolina law, public official immunity protects public officials performing discretionary acts under color of authority from suit in their individual capacity." Caraway, 2022 WL 16700687, at *16 (internal quotations and citations omitted). Public official immunity generally protects public officials from individual liability for negligence; however, it "will not protect a public officer sued in his individual

### G. Negligence, Gross Negligence, and Recklessness

Plaintiff's seventh claim is for negligence, gross negligence, and recklessness against Defendants Reid, Spencer, Kyle Beam, Josh Beam, and Williams (all in their individual capacities). Defendants argue that they are entitled to public official immunity on these claims, and that "Plaintiff's attempt to include 'gross negligence' and 'recklessness' in these claims does not change this analysis." (Document No. 52, p. 24). Succinctly, Defendants are correct that they are entitled to public official immunity on the negligence claim. However, they are not entitled to public official immunity on the gross negligence and recklessness claims, as public official immunity does not protect against such claims. See supra p. 21, n.6. Thus, the undersigned will grant summary judgment as to Plaintiff's negligence claim but deny summary judgment as to Plaintiff's claims for gross negligence and recklessness. Based on the evidence already discussed, there is a genuine dispute of material fact about whether Defendants Reid, Spencer, Kyle Beam, Josh Beam, and Williams were grossly negligent and/or reckless with respect to their conduct as it affected Plaintiff.

### H. Intentional/Reckless Infliction of Emotional Distress

Plaintiff's eighth and final claim is for intentional or reckless infliction of emotional distress against Defendants Reid, Spencer, Kyle Beam, Josh Beam, and Williams (all in their individual capacities). The analysis on this claim is much the same as the analysis on the previous

---

capacity for gross negligence." Memorandum and Recommendation at 22, Dean v. Campbell, 5:22-CV-167-KDB-DCK (W.D.N.C. July 14, 2023). In essence, a plaintiff can demonstrate that public official immunity does not apply where evidence of malice is shown or evidence that the defendant acted "outside the scope of official authority" is demonstrated. Caraway, 2022 WL 16700687, at *16 (internal quotations and citations omitted). "Generally, where an officer defendant is entitled to qualified immunity for a Section 1983 claim, the officer is likewise entitled to public official immunity on derivative state law claims." Id. Given that a jury must determine whether probable cause existed for Plaintiff's arrest, it cannot yet be determined whether Defendants are entitled to public official immunity because a finding that there was probable cause would negate any malice.

23

claim. Given that intentional or reckless infliction of emotional distress is an intentional tort, Defendants will not be entitled to public official immunity, so long as there is a sufficient showing of malice. See Willis v. Cleveland, Cty., North Carolina, 2020 WL 3578297, at *16 (W.D.N.C. July 1, 2020). Again, the undersigned will not recount the evidence already discussed. However, there is clearly sufficient evidence from which a jury could conclude that Defendants were not acting in good faith. The undersigned will therefore deny summary judgment on Plaintiff's intentional/reckless infliction of emotional distress claim.

## IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants "Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document No. 51) is **GRANTED in part and DENIED in part**. Specifically, the motion is **GRANTED** as to Plaintiff's fabrication of evidence claim under § 1983 against Defendants Spencer and Kyle Beam; Plaintiff's unlawful search claim under § 1983 against Defendants Spencer and Kyle Beam; Plaintiff's failure to intervene claim under § 1983 against Defendants Spencer and Kyle Beam; Plaintiff's Monell claim against Anson County; and Plaintiff's negligence claim under state common law against Defendants Reid, Spencer, Kyle Beam, Josh Beam, and Williams. The motion is **DENIED** as to Plaintiff's unlawful stop claim under § 1983 against Defendants Spencer and Kyle Beam; Plaintiff's unlawful arrest claim under § 1983 against Defendants Spencer, Kyle Beam, Josh Beam, and Williams; Plaintiff's failure to intervene claim under § 1983 against Defendants Josh Beam and Williams; Plaintiff's false arrest claim under state common law against Defendants Spencer, Kyle Beam, Josh Beam, and Williams; Plaintiff's gross negligence and recklessness claim under state common law against Defendants

24

Reid, Spencer, Kyle Beam, Josh Beam, and Williams; and Plaintiff's intentional/reckless infliction of emotional distress under state common law against Defendants Reid, Spencer, Kyle Beam, Josh Beam, and Williams.

**SO ORDERED**.

Signed: August 10, 2023

David C. Keesler
United States Magistrate Judge