IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:21-CV 39

| | |
|---|---|
| RAY KIFER JR.<br><br>Plaintiffs,<br><br>v.<br><br>DAVID SCOTT BURROUGHS ET. AL.,<br><br>Defendants. | **BRIEF IN SUPPORT OF DEFENDANT SCOTT HOWELL'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This Second Amended Complaint was brought by Plaintiff Ray Kifer, Jr. against the Estate of former Anson County Sheriff Landric Reid[1] ("Estate"), former Anson County Sheriff's Office ("ACSO") deputy David Scott Burroughs, ACSO Sheriff Scott Howell in his official capacity, and ACSO deputies David Spencer, Kyle Beam, Josh Beam, and Jimmy Williams, after Burroughs planted drugs in Kifer's car in an attempt to get him arrested. [Document 94].

On August 11, 2023, this Court granted summary judgment on Plaintiff's claim under *Monell v. Department of Social Services* against Anson County. [Document 74]. On August 13, 2024, this Court granted Plaintiff's motion to amend the Amended Complaint to substitute Sheriff Howell for Anson County in

---

[1] Sheriff Reid died on September 21, 2022, and this Court ordered that the Estate of Landric Reid be substituted for Sheriff Reid. [Document 48]

Plaintiff's *Monell* claim. Defendant Scott Howell is now moving for summary judgment on Plaintiff's *Monell* claim on two grounds: 1) the *Monell* claim is barred by the statute of limitations; and 2) the undisputed evidence shows that ACSO was not deliberately indifferent in training its deputies.

## II. FACTS[2]

### A. DAVID BURROUGHS AND LELA VANG STOP DATING AND BURROUGHS PLANTS DRUGS IN KIFER'S CAR WHEN KIFER BEGINS DATING VANG

Lela Vang and David Burroughs stopped dating and Vang began dating Ray Kifer Jr. [Document 74, p. 2]. Burroughs became obsessed over this break-up, which was common knowledge throughout the Anson County Sheriff's Office. *Id*. As a result of this obsession, Burroughs enacted a plan to frame Kifer for drug possession. *Id*. On March 4, 2018, Burroughs contacted a local drug dealer, James Sims, and paid him to buy drugs, and then broke into Kifer's car, and planted the drugs in the trunk of Kifer's car. *Id*.

On March 6, 2018, Burroughs informed ACSO deputy Darius Ellison that Kifer would be driving through Anson County at a specific time with drugs in his car, and asked Ellison to stop the car. *Id*. at p. 3. Ellison refused, and suggested

---

[2] Defendant will provide only the facts relevant to the *Monell* claim as this Court found them in its summary judgment order. [Document 74].

that Burroughs contact the Polkton Police Department, but they refused as well. *Id*.

Next, Burroughs contacted ACSO deputy Naji Mario El Kobersy in an attempt to have El Kobersy stop Kifer's car. *Id*. at p. 3. Instead, El Kobersy contacted ACSO drug detective Jimmy Williams about Burroughs' tip and told Williams that something did not feel right about stopping the car because the information was "obviously fishy." *Id*. Williams told El Kobersy that it sounded like a "set up" and not to stop the car. *Id*. Williams did not report this situation to his supervisor or the Sheriff. *Id*.

### B. <u>BURROUGHS ATEMPTS TO GET OTHER ACSO DEPUTIES TO STOP KIFER'S CAR</u>

On the morning of March 7, Josh Beam received a note in his mailbox from Ellison with Kifer's name and a description of Kifer's car, indicating that drugs were in the car. *Id*. at p. 3. The note did not mention Burroughs as the source of the information. *Id*. Josh Beam and Williams ordered Ellison not to pursue the tip, but neither contacted their supervisors or the Sheriff. *Id*. at pp. 3-4.

Burroughs then contacted Kyle Beam and told him about the alleged tip. *Id*. at p. 4. Kyle Beam did not act on the tip but did not call his supervisor or the Sheriff. *Id*. at p. 4. Burroughs called Spencer, and told Spencer that there was a car coming through with drugs, and he provided the tag number, and told Spencer to pay close attention to the trunk. *Id*. Burroughs gave Spencer the make and model

of the car, and told Spencer the car would be coming back and forth on Ansonville-Polkton Road. *Id*. This information threw up "red flags" to Spencer. *Id*.

> C. **DAVID SPENCER STOPS KIFER'S CAR FOR SPEEDING AND DRIVING LEFT OF CENTER AND DRUGS ARE FOUND AFTER KIFER CONSENTS TO A SEARCH**

Spencer observed Kifer's car and stopped it for travelling over the posted speed, and crossing the center line. *Id*. Spencer contacted Kyle Beam and informed Kyle that he stopped someone for crossing the center line and Kyle agreed to go to the scene. *Id*.

Spencer then asked to search the car and Kifer agreed. *Id*. Kyle Beam arrived on the scene, and Kyle and Spencer started searching the passenger area of Kifer's car, and then moved to the trunk area. *Id*. At the trunk, Spencer smelled chemicals and marijuana, popped the spare tire compartment cover and found a plastic envelope with drugs. *Id*. Spencer and Kyle arrested Kifer. *Id*.

On the police radio, Josh Beam and Williams heard that Kifer was arrested, and Williams said "oh shit." *Id.* at p. 5. Neither Williams nor Josh Beam told their supervisor or Sheriff, or United States Homeland Security officer Monte Dugger- who was riding with them- of the context of the situation. *Id*.

D. **KIFER IS TAKEN TO THE SHERIFF'S OFFICE, INTERVIEWED, AND RELEASED, AND BURROUGHS IS CRIMINALLY CHARGED AND TERMINATED**

Williams, Josh Beam, and Dugger took Kifer to ACSO and interrogated him. *Id*. Throughout the interview, Kifer consistently denied knowledge of the drugs, and suggested Burroughs set him up. *Id*. Josh Beam then told Dugger that the tip came from Burroughs and Dugger suggested that an internal investigation by an independent agency be conducted. *Id*. Josh Beam and Spencer released Kifer. *Id*. at p. 6.

After Kifer's release, ACSO performed an internal investigation. *Id*. Burroughs admitted to planting the drugs in Kifer's car, so Reid contacted the SBI to perform a criminal investigation. *Id*. Reid terminated Burroughs, and Burroughs was subsequently charged, and convicted, of obstruction of justice and possession of heroin. *Id*..

### III. ARGUMENT

Plaintiff contends that when Sheriff Reid took office, there was no mandatory training on ethics, and no regular training "on how to respond if an Anson County Deputy Sheriff suspected wrongdoing by another Anson County officer." [Document 94, ¶¶ 336-338]. Plaintiff contends that the lack of training on Section 105 of the Anson County Sheriff's Office policy, entitled "Duty to Report Violations of Laws, Ordinances, Rules and Directives," led to "the failure

5

of the Defendants to intervene to protect Ray Kifer from Burroughs by reporting their suspicions to their supervisors or to the Sheriff." *Id*. at ¶ 341. Plaintiff further contends that Sheriff Reid's failure to require his officers to be familiar with the Policy and Procedures Manual and his failure to provide training on Section 105 of the Policy led to Plaintiff's stop and arrest. *Id.* at ¶ 349.

As set forth below, Plaintiff's *Monell* claim against Sheriff Howell should be dismissed for two reasons. First, the *Monell* claim is barred by the three year statute of limitations, and the relation back doctrine does not apply. Second, the undisputed evidence is that ACSO deputies received training on reporting other deputies for misconduct.

### A. **PLAINTIFF'S *MONELL* CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

Plaintiff's *Monell* claim is barred by the statute of limitations and does not relate back to the date of filing. The statute of limitations for a § 1983 claim is determined by looking at the law of the State in which the action arose. *Owens v. Baltimore City State Attorney's Office*, 767 F.3d. 379, 388 (4th Cir. 2014). The statute of limitations in North Carolina for section 1983 claims is three years. *National Advertising Company v. City of Raleigh*, 947 F.2d 1158, 1161–1162 (4th Cir. 1991). In this case, Plaintiff was arrested on March 7, 2018, and released less than two hours later after Defendants discovered that Plaintiff was set up by David

Burroughs. [Document 94, ¶¶ 75, 155, 230]. As a result, Plaintiff's *Monell* claim needed to be filed by March 7, 2021. Plaintiff filed his complaint on January 26, 2021 without a *Monell* claim. [Document 1]. Plaintiff brought a *Monell* claim against Anson County in his Amended Complaint on October 4, 2022, and Plaintiff's *Monell* claim against Sheriff Howell was filed in his Second Amended Complaint on August 13, 2024. [Documents 36, 94]. As a result, Plaintiff's *Monell* claim is time-barred unless the relation back doctrine applies.

Plaintiff cannot rely on the relation back doctrine to avoid the statute of limitations bar. "Although the statute of limitations is an affirmative defense that must be established by the defendant, when relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007; *Western. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989).

Federal Rule of Civil Procedure 15 (c) provides that an amendment changing a party relates back to the original complaint when 1) it arises out of the same transaction as that set forth in the original complaint, and 2) within the time period set forth under Rule 4(m)- 90 days- the new party receives notice of the suit such that it will not be prejudiced in defending the case, and the new party knew or should have known that, but for a mistake as to the proper party's identity, it would

have been sued. *Goodman,* 494 F.3d at 469-470. Plaintiff cannot meet his burden to demonstrate that the *Monell* claim relates back to the original Complaint.

First, Plaintiff cannot demonstrate that the Second Amended Complaint "arises out of the transaction" as the Complaint. Plaintiff must show that there is a "factual nexus between the amendment and the original complaint." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983. The original Complaint contained no allegations relating to a failure to train, or that Kifer was arrested because Defendants failed to report Burroughs' misconduct to their superiors. [Document 1]. The new *Monell* claim involves different facts and allegations and theories than the underlying constitutional claims against Defendants set forth in the Complaint.

Several district courts have addressed similar issues. For instance, in *Stidham v. Jackson*, 2007 WL 2156155 (W.D. Va. 2007) (unpublished), the plaintiff brought a § 1983 action against a police officer who allegedly sexually assaulted her at her home, but did not assert a § 1983 action against the town that employed the officer. *Id*. at *1. The only allegations in her original complaint regarding the town were that the town was aware of the police officer's actions and failed to protect her, and the only claim against the town was based on respondeat superior. *Id*. The court denied the plaintiff leave to amend to add a § 1983 claim against the town because "there [were] absolutely no facts alleged in the [original]

Complaint that could establish any cause of action against the Town based upon the theory" that the town maintained a pattern or practice that caused her injury. *Id*. The Court held that a *Monell* claim added after the statute of limitations cannot "relate back" since it involves "an entirely new set of facts and occurrences" from a claim based upon respondeat superior. *Id*. *See also Bridges v. Murray*, 2009 WL 1405519 at *3 (W.D.N.C. 2009) (unpublished) (granting defense motion to quash *Monell*-related discovery since even if complaint was amended to add a *Monell* claim it "would be would be time barred and would not relate back to the date Plaintiff filed his Complaint"). *Folkerts v. City of Algona*, 2015 WL 8668247 at *10 (N.D.Iowa 2015) (unpublished) (finding *Monell* claim appearing for first time in amended complaint did not "relate back" because allegations of original complaint failed to "provide even a hint that the basis for any unspecified 'illegality' of the stop, detention, interrogation, arrest, and charging of Folkerts were matters of municipal policy, custom, or deliberately indifferent failure to train"); *Buelna v. City of Philadelphia*, 2002 WL 531538 at *2 (E.D.Pa. 2002) (unpublished) (newly added *Monell* claim cannot relate back since issues concerning municipal "policies, customs and procedures" involve different "conduct" under Rule 15(c)(1)(B)).

Even assuming that the "same transaction" requirement is satisfied, Plaintiff must still establish that, within 90 days, Scott Howell in his official capacity

9

(ACSO) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Sheriff Howell did not have notice of the Complaint and did not know or should have known that the Complaint would have been brought against him within 90 days of the service of the complaint, or May 3, 2021. Following this Court's order granting Plaintiff leave to amend to file his First Amended Complaint, a summons was issued for Sheriff Reid on October 13, 2022. [Document 38]. Defendant acknowledges that this service provided notice to ACSO. However, such notice must be received by the proposed defendant within the period provided for by Rule 4(m). *See Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Wilkins v. Montgomery*, 751 F.3d 214, 225 (4th Cir. 2014).

Sheriff Howell's first notice that he might be a defendant was almost a year and a half after the Complaint was filed when Plaintiff filed his Amended Complaint. Nor was it reasonable for him to conclude that he might be a defendant by a review of the Complaint. The Complaint did not name ACSO, the Sheriff's Office, or any of the individual Defendants in their official capacities. If it did, ACSO would have been put on notice because official capacity claims are claims against the Sheriff's Office. *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (internal citations omitted).

In *Wyatt v. Owens*, 2016 WL 6651410 at * 2-3 (W.D.Va. 2016) (unpublished), the court considered a similar issue. The Plaintiff filed a motion to amend his Complaint to add the Pittsylvania County Sheriff, Michael Taylor, for failure to train under a *Monell* theory after the statute of limitations had expired. *Id*. at * 1. The district court denied Plaintiff's motion to add Sheriff Taylor because Plaintiff failed to prove that Sheriff Taylor knew or should have known that he would be a party to the suit. *Id*. at * 3. The Court stated that:

> Even if Sheriff Taylor had knowledge of the action, it is not clear that he knew or should have known that such a claim would have been brought against him, absent Plaintiff's error because Sheriff Taylor was not present at the alleged incident, and it was reasonable for him to think that Plaintiff had simply decided not to sue him, and instead Plaintiff was pursuing more obvious claims versus more obvious defendants. Unlike the Nicholson and Worsham—who participated in the alleged beating, were aware that they were two of the five officers involved, and knew that five officers were being sued—Sheriff Taylor could have reasonably believed that Plaintiff had decided not to bring a Monell claim, focusing instead on the specific officers that allegedly beat him.

*Id*. at * 3.

Likewise, it was certainly reasonable for ACSO to conclude that Plaintiff was seeking redress from the individual Defendants in the Complaint, not ACSO, particularly when there were no facts even suggesting that a failure to train caused

11
Case 3:21-cv-00039-DCK     Document 100     Filed 10/01/24     Page 11 of 18

Kifer's arrest. *See Western Contracting Corp. Bechtel Corp.,* 885 F.2d. at 1200-1 (counterclaim adding new defendants does not relate back to original complaint because new counterclaim defendants were not chargeable with knowledge that they should have been parties to the original counterclaim but for a mistake because the counterclaim set out claims only against the corporation, without any mention of the individuals).

Plaintiff's alleged injuries occurred on March 7, 2018, and the statute of limitations accrued that day. Plaintiff needed to file his *Monell* claim by March 8, 2021, and he failed to do so. Plaintiff is also unable to carry his burden to demonstrate that his *Monell* claim is saved by the relation back doctrine. As a result, his *Monell* claim is subject to dismissal based upon the statute of limitations.

### B. <u>PLAINTIFF'S *MONELL* CLAIM FAILS ON THE MERITS BECAUSE PLAINTIFF CANNOT SHOW THAT ACSO WAS DELIBERATELY INDIFFERENT IN TRAINING</u>

The Supreme Court has made it abundantly clear that a Plaintiff seeking to impose *Monell* liability bears a heavy burden: "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. [citation]." *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389 (1997). The Fourth Circuit has confirmed that

"[t]he substantive requirements for proof of municipal liability are stringent." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

A policy or custom under *Monell* may arise in four ways:

(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citations omitted).

Plaintiff's *Monell* theory is based on his claim that ACSO failed to train its deputies on how to report suspected wrongdoings by other deputies. [Document 94, ¶¶ 336-349]. The United States Supreme Court has recognized that "a municipality's culpability under Section 1983 for a deprivation of rights is at its most tenuous where a claim relies on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131. S.Ct. 1350, 1359 (2011); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 105 S.Ct. 2427, 2435-2436 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

ACSO may only be held liable for the failure to train its employees where such failure "reflects 'deliberate indifference' to the rights of its citizens." *Doe v.*

*Broderick*, 225 F.3d 440, 456 (4th Cir.2000) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989)). Deliberate indifference may be found where " 'in light of the duties assigned to specific officers or employees, the need for more or different training is ... obvious, and the [failure to train is] likely to result in the violation of constitutional rights.' " *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997). In this case, the evidence is clear that all deputies were trained on how to report suspected wrongdoing by employees.

In fact, when David Spencer was asked "Have you had any training on what to do when you suspect a fellow law enforcement officer is engaged in misconduct?," David Spencer replied "Yes, ma'am." (DS 146: 2-5).[3] According to Spencer, he was trained to "[r]eport [the officer] immediately ." (DS 146: 6-7). Likewise, Kyle Beam stated that training on what to do if you suspect a fellow law enforcement officer is included in "in-service [training] from time to time" and officers are supposed to contact their supervisors if they suspect wrongdoing. (KB 97: 8-17)[4] Kyle Beam was asked "If you have suspicion, it you've got reason to

---

[3] "DS" refers to the deposition of David Spencer, followed by reference to page and line numbers, true and correct copies are attached as Exhibit 1A to the Declaration of Sean Perrin, Exhibit 1 to this Brief.

[4] "KB" refers to the deposition of Kyle Beam, followed by reference to page and line numbers, true and correct copies are attached as Exhibit 1B to the Declaration of Sean Perrin, Exhibit 1 to this Brief.

believe or suspect that a law enforcement officer is engaged in misconduct, what are you supposed to do?' and he responded "Inform your supervisors." (KB 97: 20-24). Both Spencer and Kyle Beam rebut Plaintiff's claim that ACSO deputies were not trained what to do when they suspected wrongdoing by other deputies.

Williams and Josh Beam also provided evidence that they were trained to report misconduct. Jimmy Williams testified that he received in-service training on ethics which "would play in that part" regarding reporting misconduct. (JW 45: 9-17).[5] Josh Beam confirmed that in-service training touched on "ethics and things like that, you know, what you should do if you suspect an officer committed an illegal act or something." (JB 28: 3-12)[6] According to Josh Beam, officers should take their suspicions to their supervisors "if you see it, you should report it or it—it should be something that should be investigated." (JB 28: 13-22; 35: 35: 16-18). Sheriff Reid testified that his policy was "if you see something you have to report it. If an officer do something wrong you should step in and make sure that what they're doing—that they should know what they're doing wrong. Just, as it says, just a duty to intervene." (LR 12: 4-16)[7]. When asked how his officers knew

---

[5] "JW" refers to the deposition of Jimmy Williams, followed by reference to page and line numbers, true and correct copies are attached as Exhibit 1C to the Declaration of Sean Perrin, Exhibit 1 to this Brief.

[6] "JB" refers to the deposition of Josh Beam, followed by reference to page and line numbers, true and correct copies are attached as Exhibit 1D to the Declaration of Sean Perrin, Exhibit 1 to this Brief.

[7] "LR" refers to the deposition of Landric Reid, followed by reference to page and line numbers, true and correct copies are attached as Exhibit 1E to the Declaration of Sean Perrin, Exhibit 1 to this Brief.

about it, Reid stated "[t]hey've been told about it. They read about it. When things come out I also share it with them." (LR 12: 20-24).

Plaintiff also cannot demonstrate, as he must, that there have been a pattern on similar constitutional violations which could give rise to a failure to train claim. As has been emphasized by the Supreme Court, "[a] pattern of similar constitutional violations. . . is 'ordinarily necessary' to demonstrate deliberate indifference" in a Section 1983 "failure to train" claim. *Connick*, 561 U.S. at 62, 131 S.Ct. at 1360 (internal citations omitted). As the Supreme Court explained, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 561 U.S. at 62, 131 S.Ct. at 1360. Plaintiff makes no allegations in his Second Amended Complaint that similar situations to this one occurred in the past which put ACSO "on notice that a course of training is deficient in a particular respect" and that ACSO "deliberately chose[] a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 61, 131 S.Ct. at 1360.

The undisputed evidence shows that ACSO did not have any notice that its training of officers was deficient, or that they made a deliberate, conscious decision to fail to specifically train officers on reporting officer's misconduct. In

fact, the evidence is to the contrary- all Defendants were trained on what to do if they suspected misconduct: report it to a supervisor.

## III. CONCLUSION

Undoubtedly, what happened to Plaintiff as a result of David Burroughs' actions was a travesty. However, it did not occur based on the Anson County Sheriff's Office failure to train its employees. For the foregoing reasons, Defendant Scott Howell in his official capacity requests that his motion for summary judgment be granted.

This the 1st day of October, 2024.

s/Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
Fax: 704 338-7814
Email: sean.perrin@wbd-us.com
*Attorney for Defendants Anson County, Estate of Landric Reid, David Spencer, Jimmy Williams, Josh Beam, Kyle Beam, and Scott Howell in his official capacity*

## CERTIFICATION

I hereby certify, the following: 1) No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources West Law, Lexis, FastCase, and Bloomberg; 2) Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his direction as to the accuracy of the proposition for which it is offered in the citation to authority provided.

/s/ Sean F. Perrin