# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:21-CV-039-DCK

| | |
|---|---|
| RAY KIFER, JR., ) | |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| DAVID SCOTT BURROUGHS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Scott Howell's Motion For Summary Judgment" (Document No. 99). Defendant Howell "moves for summary judgment on Plaintiff's Monell claim." Id. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition. Having carefully considered the motion and the record, the undersigned will deny the motion.

## BACKGROUND

The factual allegations underlying this lawsuit have been thoroughly addressed in previous filings and are largely undisputed. See (Document No. 74, pp. 1-6); (Document No. 100, pp. 2-6). As such, the undersigned will focus here on the procedural background most relevant to the pending motion for summary judgment.

Plaintiff Ray Kifer, Jr. ("Plaintiff" or "Kifer") initiated this action with the filing of a "Complaint And Demand For Jury Trial" (Document No. 1) on January 26, 2021. The original Complaint asserted claims based on the conduct of five (5) deputies of the Anson County Sheriff's Office – David Scott Burroughs ("Burroughs"), David Spencer ("Spencer"), Kyle Beam ("K. Beam"), Josh Beam ("J. Beam"), and Jimmy Williams ("Williams") (together, "ACSO deputies").

(Document No. 1). The crux of the Complaint is that Defendant Burroughs, with the assistance of other ACSO deputies, used his authority and position as a law enforcement officer to fabricate a crime and frame Plaintiff Kifer for a felony drug offense that he did not commit. Id. The Complaint contends that the ACSO deputies' actions were within the scope of their official duties and under color of law. (Document No. 1, pp. 2-3).

On March 19, 2021, the parties filed a "Joint Proposed Discovery Plan" (Document No. 14). This filing notes that "Plaintiff alleges that Defendant Burroughs, while employed by the Anson County Sheriff's Department as a deputy, aided and abetted by Defendants Spencer, Beam, Beam, Williams and [an] unknown federal agent, framed Plaintiff for possession of drugs, which led to the violation of Plaintiff's civil rights." (Document No. 14, p. 1). In pertinent part, the parties' proposed discovery plan also stated the following:

> The parties determined 30 days after the close of fact discovery to be the appropriate deadline for amending the pleadings based on previous experience in similar 1983 matters. **Often, during the course of discovery and as facts become known, the parties become aware of the need to add or remove named parties or claims**. **This is particularly true in this case**, as the specific roles played by the various law enforcement officers involved in Mr. Kifer's arrest are currently unknown and will require document and deposition discovery.

(Document No. 14, p. 3) (emphasis added).

On May 27, 2022, the parties filed a "Joint Motion to Amend Case Management Order" that, *inter alia*, requested a "deadline to join additional parties and/or otherwise amend the pleadings" by July 15, 2022. (Document No. 26, p. 2). The undersigned granted the parties' motion. (Document No. 27).

On July 14, 2022, Plaintiff timely filed a "...Motion For Leave To File First Amended Complaint" (Document No. 29). Plaintiff's "proposed First Amended Complaint adds a *Monell*

2

claim against Sheriff Reid in his official capacity and Anson County." Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978)). The undersigned granted the motion to amend on October 3, 2022, noting that "the instant motion was filed by the deadline the parties had jointly proposed, and the Court approved, 'to join additional parties and/or otherwise amend the pleadings.'" (Document No. 35, pp. 2-3) (citing Document Nos. 26 and 27). The undersigned further stated that the "amendment is without prejudice to Defendants re-raising any objection(s) to Plaintiff's claims in a future dispositive motion." (Document No. 35, p. 3). Plaintiff's "First Amended Complaint And Demand For Jury Trial" (Document No. 36) was filed on October 4, 2022.

"Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document No. 51) was filed on January 10, 2023. Following full briefing, and a motions hearing held on August 3, 2023, the undersigned granted in part and denied in part Defendants' "...Motion For Summary Judgment" (Document No. 51). (Document No. 74). Most pertinent to the pending motion, the undersigned granted the motion in favor of Anson County on Plaintiff's Monell claim, noting that "the proper defendant is the Sheriff." (Document No. 74, p. 22).

"Plaintiff's Motion For Leave To File Second Amended Complaint" (Document No. 78) was filed on September 6, 2023. By amending, Plaintiff sought to delete claims dismissed by the Court's summary judgment decision and add "Sheriff Landric Reid as the Defendant in his official capacity as the Anson County Sheriff in Count V." (Document No. 78, p. 1). Ultimately, the undersigned granted Plaintiff's motion to amend and the "Second Amended Complaint And Demand For Jury Trial" (Document No. 94) was filed on August 13, 2024.

3

Plaintiff contends that "at all times relevant to his Complaint, Defendant Landric Reid was the Sheriff of Anson County, and as such was the final policymaker with regard to all personnel issues within the Anson County Sheriff's Department." (Document No. 94, pp. 3-4). "Upon the death of Defendant Landric Reid, Sheriff Scott Howell in his official capacity has been substituted as a Defendant in place of Sheriff Reid in his official capacity," and "Harry B. Crow was substituted as a Defendant in place of Sheriff Reid in his individual capacity." (Document No. 94, p. 4); see also (Document Nos. 42, 45, and 90). "Harry B. Crow, Jr., an attorney duly licensed to practice law in North Carolina and the Public Administrator for Anson County, North Carolina, was appointed as the Administrator for the Estate of Landric Reid by Order of the Clerk of Superior Court of Anson County" on or about December 19, 2022. (Document No. 45, pp. 1-2).

Now pending is "Defendant Scott Howell's Motion For Summary Judgment" (Document No. 99) filed on October 1, 2024. Anson County Sheriff Scott Howell seeks summary judgment as to the Monell liability claim, Count V, brought against him in his official capacity on two grounds: "1) the *Monell* claim is barred by the statute of limitations; and 2) the undisputed evidence shows that ACSO was not deliberately indifferent in training its deputies." (Document No. 100, p. 2).

The pending motion is now ripe for review and disposition.

## STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

## DISCUSSION

In Monell v. Dep't of Social Services of City of New York, the Supreme Court established that local governments could be held responsible under § 1983 for constitutional violations caused by their own "policy or custom." Monell, 436 U.S. 658, 694 (1978). To successfully prove a Monell claim, "four theories can be pursued to prove an unlawful custom, policy, or practice violates section 1983":

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that

5

is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Bailey v. Campbell, 5:22-CV-052-KDB-DSC, 2022 WL 16849126, at *2 (W.D.N.C. Nov. 10, 2022) (internal citations omitted).

The "Second Amended Complaint..." alleges that

> Although the Sheriff's Department's Policy and Procedure Manual had an explicit section that required the reporting of official misconduct (or even the suspicion of official misconduct) to supervisors or directly to the Sheriff, employees of the Sheriff's Department were not required to read or review the Manual, and no training was conducted regarding this critical policy. The Anson County Sheriff's Department instead adopted an "anything goes" culture.

(Document No. 94, p. 2).

According to the "Second Amended Complaint...," Sheriff Landric Reid became Sheriff of Anson County in 2015, and "adopted the written policies and procedures governing the conduct of Anson County Sheriff Department law enforcement officers performing law enforcement functions on behalf of the county" that had been "adopted by his predecessor, Sheriff Tommy Allen, [and] constituted the official policy of Anson County." (Document No. 94, p. 38). Sheriff Allen had "required all law enforcement officers to read the Anson County Policy and Procedure Manual, then sign an affirmation that they had read and understood the policies and procedures"; however, Sheriff Reid did not continue that requirement." Id. Moreover, the Second Amended Complaint alleges that "the Anson County Policy and Procedure Manual was only available in the office of Sheriff Landric Reid" and that the other Defendants in this action were not even required to know the location of the Anson County Policy and Procedure Manual. Id.

The Second Amended Complaint further alleges that Sheriff Reid failed to conduct training on: the Anson County Policy and Procedure Manual; ethics; or "how to respond if an Anson

County Deputy Sheriff suspected wrongdoing by another Anson County officer." (Document No. 94, p. 39). Plaintiff specifically alleges in the Second Amended Complaint that

> 340. In 2018, Section 105 of the Anson County Policy and Procedure Manual provided as follows:
>
>> 1.05 - Duty to Report Violations of laws, Ordinances, Rules and Directives
>> Employees knowing of or suspecting other employees of violating laws, ordinances, Sheriff's Office rules, directives, special orders, or standard operating procedures shall report the same to their supervisor. If an employee believes the information is of such a nature or gravity, official channels may be bypassed and the information may be reported directly to the Sheriff.
>
> 341. The lack of training resulted in the failure of the Defendants to intervene to protect Ray Kifer from Burroughs by reporting their suspicions to their supervisors or to the Sheriff.

Id.

It is undisputed that Sheriff Scott Howell, in his official capacity, is the successor Defendant to the late Sheriff Landric Reid. Regarding the pending Monell claim against Sheriff Howell, Plaintiff concludes that "Sheriff Reid's failure to require that Anson County Sheriff's Deputies be familiar with the Policy and Procedures Manual, and his failure to provide or require training on the requirements of Section 105 of the Policy and Procedures Manual, led directly to the illegal stop and arrest of Ray Kifer." (Document No. 94, pp. 40-41).

By the instant motion, Sheriff Howell contends "that there is no genuine issue of material fact" and that he is "entitled to summary judgment as a matter of law" as to the Second Amended Complaint's Monell claim. (Document No. 99, p. 1). Defendant Howell's grounds for summary judgment are: "1) the *Monell* claim is barred by the statute of limitations; and 2) the undisputed

7

evidence shows that ACSO was not deliberately indifferent in training its deputies." (Document No. 100, p. 2).

In support of summary judgment, Howell first argues that the statute of limitations in North Carolina for section 1983 claims is three years, and since Plaintiff was arrested on March 7, 2018, his Monell claim had to be filed by March 7, 2021. (Document No. 100, pp. 6-7). Defendant Howell notes that the original Complaint was filed on January 26, 2021, without a Monell claim, and that Plaintiff first brought a Monell claim against Anson County in his Amended Complaint on October 4, 2022. (Document No. 100, p. 7). Plaintiff's Monell claim against Sheriff Howell, specifically, was included in his Second Amended Complaint filed on August 13, 2024. Id. Based on the foregoing, Plaintiff contends that the "*Monell* claim is time-barred, unless the relation back doctrine applies." Id.

Defendant Howell argues, however, that Plaintiff cannot rely on the relation back doctrine because he cannot "meet his burden to demonstrate that the *Monell* claim relates back to the original Complaint." (Document No. 100, pp. 7-8). Defendant asserts that:

> Federal Rule of Civil Procedure 15 (c) provides that an amendment changing a party relates back to the original complaint when 1) it arises out of the same transaction as that set forth in the original complaint, and 2) within the time period set forth under Rule 4(m)- 90 days- the new party receives notice of the suit such that it will not be prejudiced in defending the case, and the new party knew or should have known that, but for a mistake as to the proper party's identity, it would have been sued.

Id. (citing Goodman v. Praxair, Inc., 494 F.3d 458, 469-470 (4th Cir. 2007)).

Howell notes that Plaintiff "must show that there is a 'factual nexus between the amendment and the original complaint.'" (Document No. 100, p. 8) (quoting Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983)). Howell then suggests that there is not a sufficient factual nexus

because the Monell claim "involves different facts and allegations and theories than the underlying constitutional claims set forth in the Complaint."

Next Defendant Howell argues that even if "the 'same transaction' requirement is satisfied, Plaintiff must still establish that, within 90 days, Scott Howell in his official capacity (ACSO) 'knew or should have known the action would have been brought against it, but for a mistake concerning the proper party's identity.'" (Document No. 100, pp. 9-10) (quoting Fed.R.Civ.P. 15(c)(1)(C)(ii)).

Defendant acknowledges that Sheriff Reid and the ACSO received timely notice of the First Amended Complaint, on or about October 13, 2022, but seems to argue that because he "did not know or should have known that the Complaint would have been brought against him within 90 days of the service of the complaint," on May 3, 2021, the relation back doctrine is not applicable. (Document No. 100, p. 10).

Next, Defendant Howell argues that the "*Monell* claim fails on the merits because Plaintiff cannot show that the ACSO was deliberately indifferent in training." (Document No. 100, p. 12). Howell further asserts that the

> ACSO may only be held liable for the failure to train its employees where such failure "reflects 'deliberate indifference' to the rights of its citizens." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989)). Deliberate indifference may be found where "'in light of the duties assigned to specific officers or employees, the need for more or different training is ... obvious, and the [failure to train is] likely to result in the violation of constitutional rights.'" *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997). In this case, the evidence is clear that all deputies were trained on how to report suspected wrongdoing by employees.

9

(Document No. 100, pp. 13-14).

In opposition to "Defendant Scott Howell's Motion For Summary Judgment," Plaintiff Kifer notes that he filed his "First Amended Complaint..." on October 4, 2022, naming Landric Reid in his official capacity as the Sheriff of Anson County, and that Sean Perrin filed an answer to the First Amended Complaint on behalf of Landric Reid "in his official capacity only" on October 18, 2022. (Document No. 101, p. 1). Plaintiff notes that Sheriff Reid died shortly thereafter, but argues that "this had no legal effect on the *Monell* claim that was pending." Id. "Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, *his successor was automatically substituted* as a matter of law" and then "[o]n July 10, 2024, eighteen months after Sheriff Reid's death, the ACSO consented to the formal substitution of Scott Howell, *in his official capacity as the Sheriff of Anson County*, for Landric Reid, *in his official capacity as the Sheriff of Anson County*." (Document No. 101, pp. 1-2).

Plaintiff contends that the ACSO was timely served within 90 days of the filing of the First Amended Complaint." (Document No. 101, p. 2). Moreover, Plaintiff states that:

> Practically speaking, the Anson County Sheriff's Office has had actual notice of this lawsuit since the day it was first filed. The local media has publicized it, its employees have been deposed, a public criminal trial based on the facts was held, and a guilty verdict was rendered. To say that the ACSO did not have notice of the *Monell* claim pending against it for the past two years is to deny reality.

(Document No. 101, p. 3).[1]

Plaintiff argues that according to "well-settled Fourth Circuit law," Rule 15 and Rule 4(m) were satisfied when service of the First Amended Complaint provided notice to the ACSO within 90 days. (Document No. 101, p. 2-4) (citing Wilson v. City of Jacksonville, North Carolina, 682

---

[1] Defendant Howell's counsel, Sean Perrin, filed an Answer to the original Complaint on behalf of ACSO deputies Spencer, K. Beam, J. Beam, and Williams on February 11, 2021, and has been actively engaged in this litigation ever since on behalf of ACSO Defendants.

F.Supp.3d 481, 486-488 (E.D.N.C. 2023)).  Plaintiff notes that the Wilson court held that "so long as the newly added individual defendants receive notice and should have had knowledge of the action within the Federal Rule of Civil Procedure 4(m) 90-day service period **following filing of amended complaint**, they will have received required notice under Rule 15(c)."  (Document No. 101, p. 4) (quoting Wilson, 682 F.Supp.3d at 491) (citing McGraw v. Gore, 31 F.4th 844, 849 (4th Cir. 2022) and Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010)).

Next, Plaintiff argues "[t]he record in this case belies the claim that 'the evidence is clear that all deputies were trained on how to report suspected wrongdoing by employees.'"  (Document No. 101, p.7) (citing Document No. 100, p 14).  Plaintiff further states:

> As this Court recognized previously, it cannot "make credibility determinations" in favor of Howell's position.  (D.E. 74, p 9, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Like the unlawful arrest and failure to intervene claims in this case, the *Monell* claim requires a jury to resolve the "genuine dispute of material fact" created by the above evidence.  (D.E. 74, p 17).  At bottom, to the extent this Court entertains Defendant Howell's undisputed facts argument regarding training – and Plaintiff maintains this issue is decided and now law of the case – the discovery adduced in this case plainly reveals disputed material facts regarding training.

(Document No. 101, p. 7).

In reply, Defendant Sheriff Howell first asserts that Plaintiff's argument that timely service was accomplished pursuant to Rule 15 and Rule 4(m) is incorrect because the Rules look to "serving the original complaint, not any amended complaints."  (Document No. 102, pp. 1-2) (citing Lee v. Airgas Mid South, Inc., 793 F.3d. 894, 897-898 (8th Cir. 2015); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir. 1995)).  Howell argues that the Sheriff's Office must have received notice of a possible Monell claim within ninety (90) days of January

11

26, 2021 – the date of the filing of the original Complaint. (Document No. 102, p. 2). Howell further argues that Plaintiff's reliance on Wilson v. City of Jacksonville is misplaced. Id.

Next, Defendant Howell contends that Plaintiff has not met his burden of establishing a failure to train claim. (Document No. 102, pp. 4-7). According to Howell,

> This Court would not need to make a "credibility determination" on whether officers knew what to do when confronted with a fellow officer's misconduct. [Document 101, p. 7]. Everyone at the Sheriff's Office knew to report a co-worker if that co-worker was involved in misconduct. There is no genuine issue on this fact because no "reasonable jury could return a verdict for the nonmoving party." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020).

(Document No. 102, p. 6)

Based on the foregoing, Howell concludes that he is entitled to summary judgment.

The undersigned will begin with Defendant Howell's second argument, which does not present a close call. In short, the undersigned is not persuaded that "the undisputed evidence shows that ACSO was not deliberately indifferent in training its deputies." (Document No. 100, p. 2). Rather, the undersigned finds that there are genuine issues of material fact regarding the ACSO's training practices, or lack thereof, that must be considered by a jury.

Defendant Howell's first argument, regarding the statute of limitations, creates a slightly closer call. Contrary to Plaintiff's briefing, the Court has not previously decided this issue. See (Document No. 101, pp. 4-5) (citing Document No. 93); see also (Document No. 74, pp. 18-22). Although the undersigned did not expressly address Defendant Howell's statute of limitations argument in previous Orders, clearly the Court determined that Plaintiff's assertion of a Monell claim was not "futile." See (Document Nos. 35, 78, 93).

In reviewing the record of the case, the undersigned finds Plaintiff's previous argument regarding the applicable statute of limitations to be most persuasive. Specifically, in support of

12

"Plaintiff's Motion for Leave To File First Amended Complaint" (Document No. 29) – seeking to add a "*Monell* claim against Sheriff Reid in his official capacity and Anson County" – Plaintiff argued that discovery had revealed facts showing that the deprivation of Mr. Kifer's rights was caused by a failure to train the involved officers in a key aspect of their duties. (Document No. 30, p. 2). Plaintiff explained that he was unaware of important facts and policies of the ACSO until taking depositions in May 2022. (Document No. 30, pp. 11-13).

Plaintiff further argued:

> Defendants expend considerable effort citing cases on the relation-back principle under Federal Rule of Civil Procedure 15(c). Def. Resp. pp 7-10. However, this discussion is irrelevant because, as the Defendants acknowledge, the doctrine applies to save "a proposed claim in an amendment [that] is barred by the statute of limitations." Def. Resp. p 7 (emphasis added). As thoroughly discussed in the previous section, **Plaintiff's *Monell* claim is not time barred because the limitations period for the claim began to run at the time of Sheriff Reid's deposition on May 25, 2022**.

(Document No. 34, p. 5) (emphasis added).

Plaintiff again raises this argument in opposition to "Anson County, Estate Of Landric Reid, David Spencer, Kyle Beam, Josh Beam, And Jimmy Williams' Motion For Summary Judgment" (Document 51). Plaintiff argues in part, as follows:

> Plaintiff did not know sufficient facts at the time of the filing of the original complaint to allege a *Monell* claim. What Plaintiff only learned in discovery was that Sheriff Landric Reid (a) did not require his employees to read the policy and procedure manual (as his predecessor had required), (b) did not train his employees on the need to read the policy and procedure manual, and (c) did not train his employees on how to enforce or act upon the policies included in the policy and procedure manual. These latter, operative facts were not learned until the depositions of Mario El Kobersy on April 20, 2022, Jimmy Williams on May 18, 2022, and Sheriff Landric Reid on May 25, 2022. . . .
>
> Moreover, during the depositions of Josh Beam and Jimmy Williams, Plaintiff learned of specific facts concerning how they

13

> failed to intervene to stop Burroughs' scheme to violate Plaintiff's constitutional rights. These depositions revealed that the Sheriff's failure to train was the root cause of Beam's and Williams' inaction, and thus was "the moving force behind the particular constitutional violation." *Jones v. Chapman*, No. ELH–14–2627, 2015 WL 4509871, at *12 (D.Md. July 24, 2015). It would have been sanctionable to allege a *Monell* failure to train claim at the outset of this case without these crucial facts, and only with "naked assertions." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 557 (2007).

(Document No. 57, pp. 23-24) (internal citations omitted).

The undersigned finds Plaintiff's position that the statute of limitations for his Monell claim began to run in May 2022, to be convincing. See Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) ("Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."). A more recent decision by this Court, authored by the Honorable Richard L. Voorhees, is also instructive.

> A Court determines the statute of limitations for a § 1983 claim by looking to the law of the State in which the action arose. *Owens v. Baltimore City State's Attorneys Office,* 767 F.3d 379, 388 (4th Cir.2014). Specifically, a Court looks to the state law statute of limitation for personal injury suits. *Id.* This suit arose in North Carolina. In North Carolina, the statute of limitation for personal injury torts is three years. N.C. Gen.Stat. § 1–52.
>
> . . .
>
> "Although state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run." *Owens,* 767 F.3d at 388. Federal law looks to the common law to determine accrual, which in turn provides "that accrual occurs when the plaintiff has a complete and present cause of action[,]" *id.* at 389 (quoting *Wallace v. Kato,* 549 U.S. 384, 388 (2007)), namely, "when the plaintiff knows or has reason to know of his injury[,]" *id.*

Grimes v. City of Hickory, No. 5:14-CV-160-RLV, 2015 WL 3649106, at *3 (W.D.N.C. June 11, 2015).

As noted above, the likelihood that the claims and Defendants in this case might evolve through the discovery process was presciently anticipated by counsel for the parties, early in this case, as indicated in their "Joint Proposed Discovery Plan" filed on March 19, 2021.

> The parties determined 30 days after the close of fact discovery to be the appropriate deadline for amending the pleadings based on previous experience in similar 1983 matters. **Often, during the course of discovery and as facts become known, the parties become aware of the need to add or remove named parties or claims**. **This is particularly true in this case**, as the specific roles played by the various law enforcement officers involved in Mr. Kifer's arrest are currently unknown and will require document and deposition discovery.

(Document No. 14, p. 3) (emphasis added).

The Court adopted the parties' proposal and set January 15, 2022, as "[t]he deadline to join additional parties and/or otherwise amend the pleadings." (Document No. 15, p. 2). That deadline was later extended, at the parties' joint request, to July 15, 2022. (Document Nos. 26 and 27). As noted above, the Court then allowed Plaintiff to file a First Amended Complaint (Document No. 36) that included a Monell claim. See (Document No. 35). Plaintiff persuasively argues, as counsel for both sides had forecast, that support for a new claim against a new Defendant became apparent during the discovery process that the parties, or at least Plaintiff, were not aware of before certain deposition testimony. Plaintiff timely moved to amend this action when he learned of a viable claim against Sheriff Reid in his official capacity and the ACSO. As such, the undersigned agrees that Plaintiff's Monell claim against Sheriff Howell in his official capacity is *not* time-barred.

Even *if* the Court agreed with Defendant Howell's view on when the statute of limitations accrued, it appears likely that the relation back doctrine would apply in this instance and Defendant's motion for summary judgment would still be denied.

Based on the foregoing, the undersigned finds that "Defendant Scott Howell's Motion For Summary Judgment" should be denied.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant Scott Howell's Motion For Summary Judgment" (Document No. 99) is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for the parties shall confer via some form of "live" communication to discuss the status of the case, possible settlement, and potential trial dates, on or before **January 10, 2025**.

**IT IS FURTHER ORDERED** that counsel shall file a Joint Notice identifying all available dates for trial in February and March 2025, on or before **January 14, 2025**.

**SO ORDERED**.

Signed: December 30, 2024

David C. Keesler
United States Magistrate Judge