IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-0039-DCK

RAY KIFER, JR.,

    Plaintiff,

v.

SCOTT HOWELL, et al.,

    Defendants.

**STIPULATIONS OF FACT**

Pursuant to this Court's February 25, 2025 Order [ECF No. 119], the Parties submit the following stipulations of fact:

1. All parties are properly before the Court.

2. The Court has jurisdiction over the parties and over all of the subject matter.

3. All parties have been correctly designated.

4. There is no question as to misjoinder or nonjoinder of parties.

5. There is no question as to the capacity of the parties: Ray Kifer, Jr.; Scott Howell, in his official capacity as Sheriff of Anson County; David Spencer; Kyle Beam; Jimmy Williams; and Harry B. Crow, Jr., as the administrator of the estate of Landric Reid.

6. The individual defendants were acting under color of state law and within the scope of their duties in connection with the stop, arrest, detention, and interrogation of Ray Kifer, Jr.

7. Lela Vang and David Burroughs stopped dating and Vang began dating Ray Kifer Jr.

8. Burroughs became obsessed over this break-up.

9. Burroughs threatened to "beat [Kifer's] ass." Burroughs called up Kifer on CJ leads, a search tool with records of citizens for traffic infractions and other offense.

1

10. Burroughs spoke about Vang and Kifer to the wife of Vance Bennett.

11. As a result of this obsession, Burroughs enacted a plan to frame Kifer for drug possession.

12. On March 4, 2018, Burroughs contacted a local drug dealer, James Sims, and paid him to buy drugs, and then broke into Kifer's car, and planted the drugs in the trunk of Kifer's car.

13. On March 6, 2018, Burroughs informed ACSO deputy Darius Ellison that Kifer would be driving through Anson County at a specific time with drugs in his car, and asked Ellison to stop the car.

14. Ellison refused, and suggested that Burroughs contact the Polkton Police Department, but they refused as well.

15. Next, Burroughs contacted ACSO deputy Naji Mario El Kobersy in an attempt to have El Kobersy stop Kifer's car.

16. El Kobersy asked Burroughs to text him the information. Burroughs texted the information and a photograph of the type of car Kifer would be driving.

17. El Kobersy did not stop Kifer's car and instead contacted ACSO drug detective Jimmy Williams about Burroughs' tip and told Williams that something did not feel right about stopping the car because the information was "obviously fishy."

18. Williams was not aware of David Burroughs ever working with, or having, any confidential informants. Furthermore, he also was not aware of David Burroughs ever working any drug investigations, and he did not know Kifer to ever be involved in drugs or illegal activity of any kind. Williams believed that this "sounded like a 'set up,'" and told El-Kobersy not to stop the car.

19. Williams did not report this situation to his supervisor or the Sheriff.

20. On the morning of March 7, ACSO drug detective Josh Beam received a note in his mailbox from Ellison with Kifer's name and a description of Kifer's car, indicating that drugs were in the car. The note did not mention Burroughs as the source of the information.

21. Detectives Josh Beam and Williams conferred and ordered "Ellison not to pursue the tip" and advised they would handle the situation. Neither contacted their supervisors nor the Sheriff.

22. After meeting with Ellison, Josh Beam and Williams drove to Morven to check addresses as part of a routine gang investigation.

23. Burroughs then contacted Kyle Beam and told him about the alleged tip. Kyle Beam did not act on the tip at that time.

24. Kyle Beam did not call his supervisor or the Sheriff after receiving the tip.

25. Burroughs then called David Spencer and told Spencer that there was a car coming through Ansonville-Polkton Road with drugs, and he provided the tag number, and told Spencer to pay close attention to the trunk.

26. Burroughs gave Spencer the make and model of the car, and told Spencer the car would be coming back and forth on Ansonville-Polkton Road. This information threw up "red flags" to Spencer.

27. Spencer drove to Ansonville-Polkton Road, encountering Kifer's car.

28. Spencer initiated a traffic stop, telling Kifer that the reason for the stop was speeding and crossing the center line.

29. Spencer "told Kifer he smelled an odor of marijuana coming from the vehicle," which Kifer denied.

30. Spencer asked to search the car and Kifer agreed.

31. Spencer contacted Kyle Beam and informed Kyle that he stopped Kifer.

32. Kyle Beam went to assist Spencer.

33. When Kyle Beam approached Kifer's car, he did not smell an odor of marijuana.

34. Spencer then asked to search the car and Kifer agreed.

35. Kyle and Spencer started searching the passenger area of Kifer's car, and then moved to the trunk area.

36. At the trunk, Spencer and Kyle Beam popped the spare tire compartment cover and found a plastic envelope with drugs.

37. Kyle Beam believed the envelope of drugs looked "too organized."

38. Spencer and Kyle arrested Kifer.

39. Kifer asked why he was being arrested. Neither Spencer nor Kyle told Kifer why he was being arrested.

40. Detectives Williams and Josh Beam were working with a federal agent with the Department of Homeland Security, Jose Manolito Dugger.

41. While on routine patrol with Dugger in Morven, on the police radio, Detectives Josh Beam and Williams heard that Kifer was arrested, and Williams said, "oh shit."

42. Neither Williams nor Josh Beam told their supervisor or Sheriff, or United States Homeland Security officer Monte Dugger – who was riding with them – of the context of the situation.

43. Williams, Josh Beam, and Dugger were riding in a black SUV.

44. Williams, Josh Beam, and Dugger arrived on the side of Ansonville-Polkton Road where Kifer was waiting in a patrol car handcuffed.

45. Neither Williams nor Josh Beam told Kifer why he was being arrested.

46. Williams, Josh Beam, and Dugger put Kifer in the black SUV and took him to ACSO, in order to interrogate him.

47. On the way to the ACSO, Josh Beam stopped the car at a satellite office near an airfield to pick up his notebook while Kifer waited in the SUV with federal Agent Dugger and Williams.

48. Kifer was brought to the ACSO and interrogated.

49. Throughout the interrogation, Kifer consistently denied knowledge of the drugs, and suggested Burroughs set him up. Kifer asked why he was being arrested several times. Eventually, Kifer was shown the drugs that were found in the trunk of the car he was driving.

50. Based on his training and experience, Dugger suspected Kifer was telling the truth and stopped the interview.

51. Josh Beam then told Dugger that the tip came from Burroughs and Dugger suggested that an internal investigation by an independent agency be conducted.

52. Josh Beam informed Sheriff Reid about the interrogation, and at Sheriff Reid's direction, Kifer was released.

53. Kifer was taken to the magistrate who informed him that the investigation was continuing and he was not going to be taken into custody.

54. ACSO released Kifer.

55. After Kifer's release, ACSO performed an internal investigation.

56. David Spencer wrote a statement at the request of Lt. Brian Tice.

57. Tice also interviewed Darius Ellison and David Burroughs as a part of the internal investigation. After Burroughs admitted to planting the drugs in Kifer's car, Sheriff Reid contacted the SBI on March 8, 2018, to perform a criminal investigation.

58. The SBI agent who conducted the investigation was Brandon Blackman. Blackman interviewed several people as a part of his investigation, including the following: David Spencer, Darius Ellison, Vance Bennett, Mario El Kobersey, Polkton Police Officer Tim Hutchison, Lela Vang and Ray Kifer.

59. After turning over the investigation to the SBI, Reid terminated Burroughs on March 8, 2018, and Burroughs was subsequently charged, and convicted, of obstruction of justice and possession of heroin.

Respectfully submitted this the 18th day of March 2025.

s/ Sonya Pfeiffer
Sonya Pfeiffer, NC Bar No. 37300
David S. Rudolf, NC Bar No. 8587
Joseph Lattimore, NC Bar No. 46910
**PFEIFFER RUDOLF**
2137 South Boulevard, Suite 300
Charlotte, NC 28203
Telephone: (704) 333-9945
Facsimile: (704) 335-0224
spf@pr-lawfirm.com
dsr@pr-lawfirm.com
jpl@pr-lawfirm.com
*Attorneys for Plaintiff Ray Kifer, Jr.*

s/ Sean Perrin
Sean F. Perrin, NC Bar No. 22253
**WOMBLE BOND DICKINSON(US) LLP**
301 South College Street, Suite 3500
Charlotte, NC 28202
Telephone: (704) 331-4992
Facsimile: (704) 338-7814
Sean.perrin@wbd-us.com
*Attorney for Defendants Howell, Beam, Beam, Spencer, Williams and Crow*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served this date upon the following counsel of record via use of the CM/ECF system, which will send a notification of such filing and a copy thereof:

Sean Perrin
Sean.perrin@wbd-us.com
*Attorney for Defendants Howell, Beam, Beam, Spencer, Williams and Crow*

This 18th day of March 2025.

                                                                s/ Sonya Pfeiffer
                                                                SONYA PFEIFFER